**STATE of Missouri, Respondent,**

v.

**Lawrence D. BROWN, Appellant.**

**Lawrence D. BROWN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 43071.**

Missouri Court of Appeals,
Western District.

Feb. 18, 1992.

Raymond Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER and SMART, JJ.

SHANGLER, Judge.

The defendant Brown was charged with separate counts of kidnapping [§ 565.110.-1(5), RSMo 1986] and robbery in the second degree [§ 569.030.1, RSMo 1986]. The jury convicted Brown of kidnapping and acquitted him of robbery in the second degree. Brown was sentenced to ten years imprisonment in accordance with the jury conviction for kidnapping. The defendant Brown brings this consolidated appeal from the kidnapping conviction and from the order denying his post-conviction Rule 29.15 motion after hearing. We affirm the judgment of conviction and order denying post-conviction relief.

In the early morning of June 25, 1989, the victim, Janet Exford, was on a visit with her cousin, Kaye Miller, in Mexico, Missouri. The defendant Brown, whom Exford had known for some years, was also there. Brown needed to get to Columbia and asked Exford if she would drive him to Columbia, since he was too drunk to do so himself. They left Mexico at about 3 a.m. in the car of his friend's girlfriend. Brown was going to provide the gasoline for the car and pay Exford $20 to make the trip. When they left, Brown was driving, but after they stopped for gasoline, Exford drove the rest of the way to Columbia.

After they bought the gas, Brown passed out, and Exford awakened him as they arrived in Columbia. Brown saw some people on the street whom he knew, and asked her to pull over. He got out of the car, talked to them, and when he returned he asked Exford where his money was. She responded that she did not know what he was talking about. Brown took over the driving and had her move over to the pas-

senger side. He became upset and angry and accused her of taking his money. She again denied it. Brown drove on and then pulled over to talk to another man he knew. Exford asked Brown if she could leave and find her own way back home. Brown told her she "wasn't going anywhere" because she had his money. Brown handed the other man a lug wrench and told him not to let Exford leave. The man got into the backseat of the car and locked her door.

Brown then drove down Elletta Boulevard, still in Columbia, and Exford again denied taking his money. Brown told her to "shut up," and that she was not going anywhere until he found his money. He then stopped the car, had her get out, and searched the car for his money. He had her empty her pockets onto the seat of the car. Exford placed $25 on the seat. This was the same $25 that she had with her when she left Mexico. The car was then parked near the home of Twila Cross, Brown's girlfriend, and Brown told the other man to go get her. Twila came, and at the direction of Brown, searched Exford. No other money was found. Brown took the $25 from the car seat and put it into his pocket. After taking the money, he began beating Exford in the face, shoulders and ribs, and when she fell down, he kicked her in the ribs and thighs. The beating resulted in a swollen and split lip and broke her glasses.

Exford managed to get away and ran to a nearby apartment and beat on the door for help. Brown caught up with her, beat her again and dragged her back to the car, some twenty feet away. Brown then had Cross and the other man unlock the trunk. Brown told Exford that he was going to put her into the trunk and keep her there until she returned his money. She remonstrated again that she did not have his money. Brown threatened also that if she did not return his money, then he would return to Mexico and put a gun inside her husband's mouth and "blow him away." She struggled against Brown, Cross, and the other man, but the three placed her into the trunk of the car. The lid was pushed down and locked.

Exford located the lug wrench in the trunk and tried to pry the lid open, but could not. She removed the stereo speakers in an attempt for more air. Brown later returned to the car and yelled at her for removing the speakers. She told him that she could not breathe and that it was done to get more air. He then opened the trunk slightly to ask her if she was ready to give him his money back. She replied that she could not give him what she did not have. When she tried to push the lid open, he slammed it down and told her that if she did not return the money, he was going to leave her there until she died.

Exford testified that she was in the trunk for three or four hours before she was discovered. Deakins, a Columbia police officer, testified that at approximately 7:20 that morning he found the car parked on the street. He asked if there was anyone inside the trunk. Exford answered, and the fire department was dispatched for the rescue. Deakins could see that Exford had swollen and split lips, a very large swelling on the forehead, and her clothing was soaked with perspiration. Exford appeared dazed and confused. Her shirt was torn and dirty and her jeans were stained with blood.

The defendant Brown testified at the trial. His version of the events is as follows. Brown was not drunk when they left Mexico and that prior to falling asleep he had $74 in his pockets. He did not see Exford take his money or ever see it in her possession, but insisted nevertheless that she stole his money. According to Brown, he and Exford went to Columbia because she wanted him to buy her some drugs. After purchasing gasoline, he had $74 which he placed in his jeans. He let Exford drive to Columbia because he did not have a driver's license. He fell asleep during the drive.

When they arrived in Columbia, they went to Trinity Street where he negotiated a buy of cocaine. When he reached in his pocket, he discovered that he had no money. He turned around and asked Exford what happened to his money. He then started to drive back to Mexico, and picked

up a man who flagged him down. According to Brown, Exford never tried or asked to leave. Brown drove to his girlfriend's house and asked her to search Exford, but Exford refused to allow it. He denied that he ever emptied her pockets or took any money. He admitted that he became angry at Exford, slapped her, and placed her in the trunk. It was his testimony, however, that he did so by himself and only after Exford tried to run away and refused to go inside the house with him while he called the police.

The jury found Brown guilty of kidnapping and returned a sentence of ten years imprisonment. The jury found Brown not guilty of robbery in the second degree. Sentence was imposed in accordance with the jury verdict. Brown then filed a motion under Rule 29.15 for post-conviction relief, which was denied after an evidentiary hearing.

### The Direct Appeal

The elements of the crime of kidnapping as formulated by the information in terms of § 565.110.1(5) are threefold: unlawful confinement of another for a substantial period of time, without her consent, with the purpose of inflicting physical injury on or terrorizing the victim. MAI–Cr 3d 319.-24. Brown contends that there was no substantial proof that he acted against Exford with the purpose of causing her physical injury or terror. He argues that, under the evidence, the confinement of Exford in the trunk of the car, and her asportation, was neither to inflict injury nor to terrorize her, but as incident to the lawful enterprise of reclaiming the money that she had stolen from him, and therefore the offense was not proven. In support, he cites *State v. Johnson*, 549 S.W.2d 627 (Mo.App. 1977)—an opinion of this court.

■ *Johnson* explains that under pre-Code § 559.240, RSMo 1969, the unlawful confinement or asportation constituent of kidnapping was of the character of a false imprisonment, and since most conduct within the scope of the kidnapping law was already punishable as other crimes, it was necessary to distinguish authentic kidnapping from verisimilar conduct where the purpose was to commit a different offense. Therefore, the evidence of asportation or confinement did not prove a kidnapping unless the removal or confinement increased the dangerousness of defendant's behavior. *Id.* at 631[8]. That is to say, the law discountenanced the distorted prosecution of a lesser crime into the more serious kidnapping merely because the criminal conduct also entailed an asportation or confinement, but only incidental to the criminal purpose of the defendant. *Id.* at 632[9].

Brown was prosecuted under Code § 565.110, and not the pre-Code antecedent explained and applied in *Johnson*. The Code sections on kidnapping cover the same matters as the pre-Code law, but avoid the arcane language and set out the purposes of confinement with more precision. They are nevertheless congruent in scope as well as evidential policy. *See* § 565.110, Comment to 1973 Proposed Code. It remains valid under the Code, as before, that kidnapping is not a proper charge where the movement or confinement of the victim is only incidental to another offense. *State v. Jackson*, 703 S.W.2d 30, 33 (Mo.App.1985). It also remains valid, as before, that where the removal or confinement adds a new danger of injury or death to that already present from the other offense—here second degree robbery—that constituent element of kidnapping is proven. *State v. Stewart*, 615 S.W.2d 600, 603[2] (Mo.App.1981).

■ Brown does not argue here that the forcible confinement of the victim Exford, first in the car and then in the trunk, was only incidental to the robbery from her person with which he was charged, so that the kidnapping—however designated—charged the same crime. He does not argue that the evidence, if believed, does not prove that the confinement in the automobile and trunk did not increase the risk of injury or death to the victim. He argues merely, and exclusively from his own evidence, that the forcible confinement imposed upon Exford, first in the automobile and then in the trunk, was to compel the

return of the money he believed she stole from him and to keep her for delivery to the police. There was no purpose to injure or cause her terror, Brown argues, and although he did inflict injury, it was as an incident to the confinement.

The evidence that Brown confined Exford for a significant period—three hours—to injure her or terrorize her was substantial. She was prevented from leaving the car by a man with a lug wrench who acted on Brown's directions, she was beaten and injured by Brown, and was dragged back to the car when she attempted to escape from that confinement. Exford was then beaten again and was told that she would be placed in the trunk if the money was not returned. Brown also threatened to blow her husband away with a gun if she did not return the money. Later on, he placed her in the car trunk and locked the lid. He then slammed it down on her again when she attempted to get out. Brown told her that he was going to leave her there until she died, unless she returned the money—and then he left. Exford struggled for air and with effort made space for more oxygen. She was discovered by the police three hours later with injuries to her face, back, hands, arms, and her jeans stained with blood.

■ The evidence proved a submissible case of kidnapping: that Brown confined Exford for a substantial period of time without her consent with the purpose of inflicting personal injury on or terrorizing her. In *State v. Vitiello*, 791 S.W.2d 837 (Mo.App.1990), the defendant was convicted of kidnapping after he entered the home of his former girlfriend and abducted their daughter. He telephoned to say that he had the child and that the mother would not get her back unless she agreed to marry him. The defendant argued, as does Brown here, that his motive proved that his intent was not to terrorize, but for a legitimate end—there, to convince the mother to marry him. *Vitiello* observed, as do we, that however legitimate the motive of the action, the use of terror makes the action illegitimate and culpable under § 565.110.-1(5). The first point is denied.

■ The second point asserts that the refusal by the trial court to submit Instruction A was error. That instruction, on the pattern of MAI–Cr3d 306.16, which submits to the jury the defense of justification for the lawful use of physical force by a private person to make an arrest or prevent the escape of a person whom he reasonably believes has committed a crime and, in fact, has committed the crime. This defense is enacted by § 563.051.2, RSMo 1986.

The burden of injecting this issue is on the defendant. Whenever the evidence supports the defense, the instruction must be given. MAI–Cr 306.16, Notes on Use; *State v. Thomas*, 674 S.W.2d 131, 137[12] (Mo.App.1984). In that assessment, the defendant is entitled to the benefit of all favorable evidence and its logical inferences. *State v. Harris*, 598 S.W.2d 200, 203[6–9] (Mo.App.1980). We conclude that there was no substantial evidence to support the tendered instruction, or even any of its component propositions, and hence its refusal was not error.

Brown was not entitled to MAI–Cr 306.16 unless there was substantial evidence that he acted under a reasonable belief that Exford had committed a crime and had, in fact, committed such crime, and that he used such force as was reasonably necessary to effect the arrest or prevent her escape. There was no evidence for an inference that Brown acted from a reasonable belief that Exford committed a crime, or that she committed the crime of stealing money from him. In fact, Brown did not see Exford take the money, she insistently denied that she took any money that belonged to him, and no money that belonged to Brown was ever found on Exford. Brown proved only that he *suspected* that Exford stole $74 from him while he slept.

■ Brown argues nevertheless that the jury verdict to acquit him of the second degree robbery charge confirms that Exford did, in fact, steal his money. If we are to speculate, it may be that the evidence shows that Brown beat her up, but only after he took the $25 that she had emptied onto the car seat from her pocket. This may have led the jury to conclude that

Brown stole her money, but not forcibly as the proof second-degree robbery requires. § 569.030, RSMo 1986. In any event, that Brown was acquitted of stealing Exford's money does not engender an inference that Exford stole Brown's money. There was no substantial basis for a submission of the propositions that Brown reasonably believed that Exford stole his money and that, in fact, she did steal his money.

■ Nor was there any basis for a submission that Brown acted to arrest her or prevent her escape until he could deliver her to the police and that he used only that physical force immediately necessary to accomplish those ends. Brown never called the police or took any initiative to involve them during the three hours of confinement. Rather, when he saw the police rescuing Exford from the trunk, Brown simply returned to Mexico. Moreover, the antics of repeated beatings, dragging Exford to the car when she attempted to avoid more abuse, and finally enclosing her in the trunk to remain there until she died, transcended any necessity reasonably attending a citizen's arrest. The second point is denied.

■ The third point of error on appeal is the submission by the court of MAI–Cr 3d 302.04. Section 546.070(4) requires the submission of a definition of *reasonable doubt*. MAI–Cr 3d 302.04 does this. It defines the term as proof that leaves the jurors *firmly convinced* of the defendant's guilt. The defendant contends that the definition dilutes the state's burden of proof and therefore is unconstitutional. That claim has been repeatedly rejected by our courts. *State v. Wacaser,* 794 S.W.2d 190, 195[8] n. 5 (Mo. banc 1990); *State v. Murray,* 744 S.W.2d 762, 771[13] (Mo. banc 1988).

The defendant urges that our decisions be reconsidered in light of *Cage v. Louisiana,* — U.S. —, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), recently decided. In that case, the United States Supreme Court invalidated an instruction that equated *reasonable doubt* with a *grave uncertainty* and an *actual substantial doubt* and which required a *moral certainty* that the defendant was guilty. *Cage* found that *substantial* and *grave,* as commonly understood, imposed a higher degree of doubt than *reasonable doubt* for acquittal. The Missouri Supreme Court has noticed *Cage* and has reaffirmed the constitutionality of the definition that proof beyond a *reasonable doubt* is proof that leaves the jurors *firmly convinced* of the defendant's guilt. *State v. Griffin,* 818 S.W.2d 278, 282[7] (Mo. banc 1991); *State v. Waller,* 816 S.W.2d 212, 218[8] (Mo. banc 1991).

The judgment of conviction is affirmed.

### The Post–Conviction Appeal

On this appeal, Brown contends that the post-conviction court erred in denying the contention that trial counsel was ineffective by failure to call certain witnesses to testify in his defense. He asserts, for that reason, denial of relief from the judgment and conviction under Rule 29.15 was clearly erroneous and should be reversed. Brown acknowledges that in order to sustain a claim of ineffective assistance of counsel he must prove that the performance of counsel was deficient by professional standards and that he was prejudiced thereby. He must also show a reasonable probability that the outcome would have been different but for the professional errors. *Strickland v. Washington,* 466 U.S. 668, 697–99, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); *State v. Stepter,* 794 S.W.2d 649, 656[16–18] (Mo. banc 1990).

■ The contention is that counsel was derelict in the duty to make a reasonable effort to locate witnesses Arthur Jackson, Sharon Miller and Stephanie Flanigan, named by Brown to corroborate his version of the events of the night and morning of June 24 and 25 of 1989. The testimony of Jackson, Miller and Flanigan was presented at the hearing on the motion.

Flanigan would have testified at the trial that on the morning of the event, Brown had come to her to obtain a key to the trunk of the car in which Exford was locked. Brown contends that this bore on his lack of requisite state of mind for kidnapping. Trial counsel testified that his

investigator was unable to find Flanigan. The court found that there was no credible evidence to show that Flanigan could have been found in time to testify at the trial or that her testimony was so important as to give rise to a reasonable likelihood that the outcome of the trial would have been different had she testified. The court denied that ground for relief. That determination was not clearly erroneous. *State v. Vinson*, 800 S.W.2d 444, 448–49[10] (Mo. banc 1990).

Jackson would have testified at the trial that he encountered Brown and Exford in Mexico on the morning of the event, and it was the victim Exford who was eager to get to Columbia. Brown had been drinking, but Jackson could not say that he was intoxicated. That evidence, Brown argues, would have supported the defense that Brown did not have the requisite mental state to be convicted of kidnapping. Trial counsel testified that an investigator was sent to Mexico on two occasions, but Jackson could not be found to summon as a witness at the trial. The motion court determined, that as to Jackson also, there was no credible evidence that counsel had any information that would have enabled him to seek and find Jackson in time for the trial, or if found, that his testimony would have changed the outcome. In addition, the court found that whether or not Exford importuned Brown to get to Columbia was irrelevant to the issues at the trial. That determination of fact was not clearly erroneous. *Id.*

Brown contends that Sharon Miller would have testified that she saw Brown before he left Mexico for Columbia and that at that time he was not intoxicated. That testimony, he says, would have corroborated his own and supported the defense that he lacked the mental state for kidnapping. Her actual testimony on the motion was that when she saw Brown on that morning at the home of their acquaintance, he had a bottle, but he was not intoxicated. The trial counsel testified it was a strategic decision not to call Miller as a witness for the defense—he was more concerned with the later events in Columbia than what happened in Mexico. The motion court found that the evidence of Brown's non-intoxicated state in Mexico was at best only "tenuous corroboration" of movant's testimony compared to the total evidence of the commission of the crime in Columbia, and denied that ground of ineffective assistance of counsel. That determination was not clearly erroneous. The decision not to call Miller as a witness was a matter of legitimate trial strategy, a function of trial counsel not readily open to challenge on a post-conviction proceeding. *State v. Anderson*, 785 S.W.2d 596, 601[3] (Mo.App.1990). It was not open to challenge on the record before the hearing court or to us on appeal.

The denial of the motion of defendant Brown for post-conviction relief is not clearly erroneous, and is affirmed. Rule 29.15(j).

All concur.