**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Jonathan BROCK,**
**Defendant/Appellant.**

**No. ED 81534.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 30, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 21, 2003.

John Munson Morris, III, Assistant Attorney General, Evan J. Buchheim, Jefferson City, MO, for respondent.

Susan S. Kister, Clayton, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

Defendant, Jonathan Brock, appeals from the judgment entered on a jury verdict finding him guilty of the class B felony of kidnapping, in violation of Section 565.110 RSMo (2000) (Count I), the class D felony of unlawful use of a weapon, in violation of Section 571.030.1(4) RSMo (2000) (Count III), the class A misdemeanor of domestic assault third, in violation of Section 565.074 RSMo (2000) (Count IV), and the class A misdemeanor of endangering the welfare of a child, in violation of Section 568.050 RSMo (2000) (Count V). The court found defendant to be a prior offender and sentenced him to fifteen years' imprisonment on the kidnapping count and three years' imprisonment on the unlawful use of a weapon count, to be served consecutively. It further sentenced defendant to one year on the domestic assault count and one year on the endangering count, to be served concurrently with each other and concurrently with the sentences on the kidnapping and weapon counts.

The charges arose from an incident in which defendant, while trying to prevent his wife from leaving their home, punched, beat, and choked her and dragged her to other rooms of their dwelling and threatened to kill her with a knife if she told her nine-year-old son to leave. This attack began while his wife was standing next to her nine-year-old son, and continued although the child stayed with his mother as defendant moved her, pleaded with defendant to stop hitting his mother, and wrapped his arms around her waist in an attempt to shield her from defendant. On appeal defendant contends that the trial court erred in denying his motion for acquittal on the kidnapping and endangering the welfare of a child counts because they were not supported by substantial evi-

dence. Defendant also asserts that the trial court erred in denying his motion to dismiss four other counts for prosecutorial vindictiveness. We affirm.

Defendant, Jonathan Brock, and Ms. Sonja Cahill, the victim, were married on July 31, 2000, after which they lived together with Ms. Cahill's nine-year-old son, Darron, in an apartment in the City of St. Louis. On December 22, 2000, Ms. Cahill told defendant she thought they needed to separate and began to pack some of her and Darron's belongings. As Ms. Cahill and Darron approached the door to leave, defendant stood in front of the door. When Ms. Cahill reached for the door, with Darron standing next to her, defendant struck her in the face. In defendant's own words, "she was not free to leave." Defendant pulled Ms. Cahill into another room and struck her multiple times as she was lying on the floor. Darron followed them into the room. Ms. Cahill testified, "Darron was right there, yelling and screaming ... he wanted to help, but he was scared too." Darron was telling defendant to stop. Defendant himself testified:

Q. Darron was present when you were hitting his mom?

A. Yes, he was.

Q. He was screaming, begging you to quit hitting his mom.

A. What it was is that, from the time I struck the second time, he ran in to her, he wrapped his arms around her waist, as more like a shield, for I wouldn't strike her again, and she was bent over, holding him, and she instructed him, she say, "Go downstairs—" no, she say, "Go downstairs and call 911."

Q. And you continued punching her.

A. I walked up to her and I struck her again.

Darron ran downstairs and alerted neighbors who phoned the police. Defendant held Ms. Cahill in a headlock, which interfered with her breathing and pulled her into the bathroom where she spit blood into the toilet. Darron came back upstairs and looked at defendant holding and choking Ms. Cahill in the bathroom. Her face was bleeding and eyes were swollen shut. Defendant was still hitting Ms. Cahill and Darron again asked him to stop. Ms. Cahill testified she "was scared something might happen" to Darron and tried to tell him to go back downstairs. At that point defendant pulled a knife and held it to Ms. Cahill's throat and said, "Tell him not to go anywhere. You tell him to leave, I'll kill you." Darron cried and would not leave. Defendant finally released Ms. Cahill when Darron observed that the police had arrived.

Ms. Cahill was taken to the emergency room with facial swelling, lacerations, abrasion marks on her neck, bleeding inside one eye, and severe pain. A CAT scan revealed cheekbone fractures and an orbital floor fracture.

The case went to trial on six counts of an original eight-count indictment. The first five counts contained charges arising out of the December, 2000 incident and the last three counts contained charges arising out of a different incident in September, 2000. Two of the counts arising out of the September incident were dismissed prior to trial for improper venue. The jury returned a verdict of guilty on five of the six counts. After the jury returned its verdict, the state filed a substitute information in lieu of indictment that added the allegation that defendant was a prior and persistent offender. At sentencing, the trial court granted defendant's motion for judgment of acquittal on Count VI, which was the only remaining count that related to the September incident. Defendant was subsequently sentenced on the four counts

that arose out of the December, 2000 incident on which he was found guilty.

## DISCUSSION

In his first two points, defendant asserts error in the denial of his motion for acquittal. We review the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case. *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App.1996). In determining whether the evidence is sufficient to support a conviction, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict and we disregard all contradictory evidence and inferences. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). We look only to whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Ervin*, 979 S.W.2d 149, 159 (Mo. banc 1998).

### 1. *Kidnapping*

For his first point defendant contends that the trial court erred in denying his motion for judgment of acquittal on count I, which charged the class B kidnapping of Ms. Cahill by unlawfully confining her for a substantial period, for the purpose of terrorizing her. Defendant argues that the state failed to prove that he confined her for the purpose of terrorizing her or that Ms. Cahill was at increased risk because of the confinement. He further claims that the confinement was incidental to another offense, the assault, which, he contends, was insufficient as a matter of law to prove kidnapping.

Section 565.110.1(5) provides:

1. A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his con-

sent for a substantial period, for the purpose of

\*     \*     \*     \*     \*     \*

(5) Inflicting physical injury on or terrorizing the victim or another.

Defendant argues that his confinement of Ms. Cahill was merely incidental to his assault on her and that the evidence is therefore insufficient to support a kidnapping conviction. He relies on the statement from *State v. Brown*, 824 S.W.2d 924, 927 (Mo.App.1992) that "kidnapping is not a proper charge where the movement or confinement of the victim is only incidental to another offense." The state responds that this rule is not applicable to Section 565.110.1(5), but "might" be appropriate if a defendant is charged under subsection (4), which involves confining another for the purpose of "[f]acilitating the commission of any felony or flight thereafter." Section 565.110.1(4) RSMo (2000). *See State v. Shelton*, 78 S.W.3d 200, 204 (Mo. App.2002). We do not need to resolve this issue because, even if subsection (5) has such a requirement, there was sufficient evidence for a reasonable jury to find that defendant's conduct was not simply incidental to the assault he committed against his wife.

Although, under *Brown* and cases decided under Section 565.110.1(4), the state must prove an increased risk or harm or danger to the victim because of the movement or confinement, the increase in risk need not be inherent in the movement itself. *Shelton*, 78 S.W.3d at 204. "The additional risk necessary to sustain a conviction of kidnapping may be established by showing that the remoteness or privacy of the area to which the victim was confined created the potential of more serious criminal activity." *Id.* "Whether the asportation or confinement of the victim necessary to commit the offense of kidnap-

ping occurs depends on the facts of each case." *Id.*

■ In this case the sequence of criminal events was generated by defendant's expressed intent to keep Ms. Cahill in the apartment. His confinement of Ms. Cahill in the apartment increased the risk of even more serious criminal activity and greater harm and danger to Ms. Cahill. Her confinement made her escape more difficult and defendant's criminal activity less visible. *See Shelton,* 78 S.W.3d at 205.

Terrorize is defined as "to fill with terror or anxiety," "to coerce by threat or violence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2361 (1966). Defendant's repeated beating of Ms. Cahill and threat to kill her while holding a knife to her throat, all in front of her son, was sufficient evidence to show that his purpose was to terrorize Ms. Cahill. Ms. Cahill's pleading with her son to get help and her attempt to get him to leave again after he returned is evidence of the terror she experienced. *Shelton,* 78 S.W.3d at 205. "Terror that a victim experiences during the commission of a crime is a harm that the kidnapping statute is intended to address." *Id.* The evidence in this case demonstrates that Ms. Cahill's confinement was more than incidental to the assault. *Id.* Defendant was not unfairly subjected to multiple punishments. *Id.* Point one is denied.

## 2. *Child Endangerment*

For his second point defendant asserts that the trial court erred in denying his motion for judgment of acquittal on count V, endangering the welfare of the child, Darron, by acting "with criminal negligence in a manner that created a substantial risk to the life, body, and health of Darron Wiley, a child less than seventeen years old, by assaulting his mother in his presence". He contends that the state failed to prove that his act of assaulting Ms. Cahill in Darron's presence created a substantial risk to Darron's life, body, or health. The trial court overruled defendant's motion for judgment at the close of all the evidence on this count because of the evidence that the child had gotten between defendant and Ms. Cahill during the assault. The court denied the motion for acquittal of this count after trial without further explanation.

The jury instruction for count V limited the jury's analysis to whether or not assaulting the mother in the child's presence created a substantial risk to his life, body or health. Accordingly, our review of the sufficiency of the evidence will be limited to whether the state presented substantial evidence to support such a finding. *State v. Hunter,* 939 S.W.2d 542, 544 (Mo.App. 1997).

■ A person commits the crime of endangering the welfare of a child in the second degree if he, with criminal negligence, acts in a manner that creates a substantial risk to the life, body or health of a child under seventeen. Section 568.050.1 RSMo (2000). A person acts with "criminal negligence" when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation. Section 562.016.5 RSMo (2000). Read together, these two statutes require the state to prove defendant failed to be aware of a substantial or unjustifiable risk that his conduct would *endanger* the child. *See State v. Riggs,* 2 S.W.3d 867, 873 (Mo.App.1999)(making a comparable analysis under Section 568.045.1 RSMo (2000), the crime of endangering the welfare of a child in the first degree, under which a defendant must act "knowingly.") "Substantial" is defined as "not seeming or

imaginary: not illusive". WEBSTER'S, *supra*, at 2280. And "risk" is defined as "the possibility of loss, injury, disadvantage or destruction". *Id.* at 1961. A charge of child endangerment can be filed whether the outcome of an incident is an injury to the child or not. *Riggs*, 2 S.W.3d at 873. That is, the question before the jury would be whether or not defendant negligently put the child in a position of substantial risk by his conduct. *Id.*

█ Defendant began the assault on the mother while she was standing next to her child. He continued beating and attacking the mother and dragged her to different rooms while the child tried to stay with the mother, begged him to stop, and physically intervened in an attempt to shield the mother. Defendant continued the assault in the bathroom where the child returned to the mother and again begged him to stop. He kept the child in this zone of danger by holding a knife to the mother's neck and threatening to kill the mother if she told the child to leave. He did not stop the assault until the police arrived. Defendant's assault on Ms. Cahill put Darron in a position of substantial risk because the attack on the mother in front of the child caused the child to stay with the mother while she was being attacked and attempt to intervene, giving rise to the very real possibility that the child would get in the way of defendant's violent blows to the mother. This evidence was sufficient for reasonable jurors to find that defendant's conduct created a substantial risk of endangerment to Darron's life, body and health. Point two is denied.

### 3. *Motion to Dismiss*

For his third point defendant asserts that the trial court erred in denying his motion to dismiss counts I, VI, VII, and VIII for prosecutorial vindictiveness. We do not reach the merits of this claim because the claim of error with respect to counts VI, VII and VIII is moot and the claim of error with respect to all of these counts was not preserved by the timely filing of a motion for new trial.

█ Counts VII and VIII were dismissed for improper venue, and the trial court granted defendant's motion for acquittal on count VI. Under these circumstances, defendant's claim that these counts should have been dismissed for a different reason is moot. *See State v. Jordan*, 751 S.W.2d 68, 74–77 (Mo.App. 1988). An appellate court will not consider academic, moot, or abstract questions in criminal cases. *State v. Kiesau*, 794 S.W.2d 309, 312 (Mo.App.1990).

█ This leaves only the claim of error with respect to count I. However, this point is not preserved because defendant's motion for new trial was untimely under Rule 29.11 in that it was filed on May 13, 2002, more than fifteen days after the verdict was returned on April 25, 2002.

At sentencing, the trial court announced that the motion for new trial bore a filing date of May 13, 2002 and the record did not show that the court had granted any extension of time to file the motion. Defendant claimed that he filed the motion earlier and that he possessed a copy of the motion that was stamped May 10, but he did not have it in court. The court said it had no record of a May 10 filing for the motion for new trial, but it would hear the motion "on the assumption" it was filed on May 10, in the event it should later be determined that a motion had been timely filed but had not yet reached the court's file.

The record on appeal contains a certified copy of the docket sheet, which shows that the first motion for new trial was filed on May 13, 2002. The legal file contains a motion for new trial bearing a file stamp

containing the word "FILED," and the date "May 13, 2002" and which is initialed by a deputy clerk under the printed name of the circuit clerk. The legal file also contains another copy of the motion that bears a different stamp of clerk's office, which contains the date "May 9, 2002," but which does not contain the word "FILED" and is not initialed or otherwise signed on the line provided for a clerk to do so.

Defendant's claim that the motion was originally filed on May 10 is not supported by the record. The copy of the motion bearing the May 9 date is not marked "FILED" and is not initialed by the clerk's office. Further, the file contains a properly file-stamped copy of the motion for new trial bearing the May 13 date. The certified copy of the circuit clerk's docket sheets reflects an unequivocal filing date of May 13. On this record we must consider the motion filed on May 13, 2002. *Unnerstall v. State*, 53 S.W.3d 589, 591 (Mo.App. 2001).

The May 13 date is more than 15 days after the return of the verdict, and thus not within the time limitations of Rule 29.11. The time limitations in Rule 29.11 are mandatory; if a defendant does not apply for a time extension within the fifteen-day deadline, the trial court has no authority to extend the deadline. *State v. Yates*, 982 S.W.2d 767, 769 (Mo.App.1998). An untimely motion preserves nothing for review. *Id.*

We will not review a claim of plain error under Rule 30.20 unless there are substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Chaney*, 967 S.W.2d 47, 59 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). There are no extraordinary circumstances in this case to justify reviewing this argument as a matter of plain error. *State v. Mosley*, 980 S.W.2d 1, 3 (Mo.App.1998).

The judgment of the trial court is affirmed.[1]

PAUL J. SIMON, P.J. and GARY M. GAERTNER, SR., J., concur.

---

1. Defendant's motion to file supplemental legal file is granted.