**STATE of Missouri, Respondent,**

v.

**Antonio D. SISTRUNK, Appellant.**

**No. ED 98726.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 1, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 5, 2013.

Application for Transfer Denied Dec. 24, 2013.

594

Maleaner Harvey, St. Louis, MO, for Appellant.

Chris Koster, Todd T. Smith, Jefferson City, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Antonio Sistrunk ("Defendant") appeals from the trial court's judgment, following a jury's guilty verdict, of robbery in the first degree, in violation of Section 569.020, RSMo 2000,[1] armed criminal action ("ACA"), in violation of Section 571.015, and kidnapping, in violation of Section 565.110. On appeal, Defendant alleges the trial court erred in: (1) denying Defendant's motion for judgment of acquittal as to first-degree robbery and ACA because the evidence was insufficient to sustain the convictions; and (2) denying Defendant's motion for judgment of acquittal as to kidnapping because the evidence was insufficient to sustain that conviction. We affirm.

## I. BACKGROUND

The relevant facts, viewed in the light most favorable to the jury verdict, are as follows. In the early afternoon, on or about May 21, 2009, Defendant and an unidentified man ("Unidentified Accomplice") entered Lady Jane's Antiques on Cherokee Street in the City of St. Louis. At the time Defendant and Unidentified Accomplice entered the antique store, the only individual present was the store owner, John Brauer ("Victim"). Defendant and Unidentified Accomplice began perusing the store and conversing with Victim.

Soon, after entering the store, Unidentified Accomplice pulled a black gun from his waistband and pointed it at Victim with his finger on the trigger. Defendant, meanwhile, pointed a "very hard" object at the back of Victim's head, which Victim "assumed" was a gun although he never saw the object. Defendant proceeded to reach into Victim's left and right pockets and removed the cash and credit cards therein located.

While Unidentified Accomplice continued to point his gun at Victim, Defendant assisted Victim in moving towards the back of the store (in order to remove Victim from sight of the store's front door) and guided Victim to the ground. Using the cord from a nearby lamp, Defendant tied Victim's hands together and used Victim's shoestrings to tie Victim's ankles together. Before fleeing the store, Unidentified Accomplice collected the Victim's laptop, cash, and cell phone sitting on the store counter.

After Defendant and Unidentified Accomplice fled the store, within two minutes Victim kicked-off his shoes and ran outside with his hands still tied together by the lamp cord. Fortunately, a City of St. Louis police officer had just turned his vehicle onto Cherokee Street, and Victim notified the officer of the incident.

Roughly a week later, Victim identified Defendant in a photographic-lineup and Defendant's fingerprints were matched with the fingerprints found on the lamp whose cord was used to tie Victim's hands. The identity of the Unidentified Accomplice has never been discovered.

---

1. All statutory references are to RSMo 2000, unless otherwise specified.

At trial, Defendant testified that he stole Victim's cash, laptop, cell phone and credit cards, moved Victim to the back of the store, and tied Victim's hand and ankles. However, Defendant asserted that he acted alone, without the aid or assistance of any other individual, and that he completed the crime without a gun or any other dangerous or deadly instrument.

At the close of all evidence, Defendant filed a motion for judgment of acquittal on all charges; the trial court denied Defendant's motion. The jury returned verdicts of guilty for all three counts.

Defendant now appeals.

## II. DISCUSSION

Defendant presents two points on appeal. Both points raised by Defendant challenge the sufficiency of the evidence supporting his convictions.

In his first point, Defendant claims the trial court erred in denying his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to support Defendant's convictions of first-degree robbery and the accompanying ACA. Specifically, Defendant argues that the State failed to prove Defendant acted in concert with another and that he stole from the victim with the use of a deadly weapon or instrument.

Second, Defendant contends the trial court erred in denying his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence to support Defendant's conviction of kidnapping. Defendant argues the evidence adduced during trial failed to establish that Defendant unlawfully confined Victim for a "substantial period" after the commission of the crime of robbery for the purpose of facilitating flight.

### Standard of Review

Standard of Review This Court reviews the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case. *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App. E.D.1996). This Court "will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *State v. Hunter*, 179 S.W.3d 317, 320 (Mo.App. E.D.2005). In so reviewing, this Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn therefrom, whereas, all contrary evidence and inferences are disregarded. *State v. Scholl*, 114 S.W.3d 304, 307 (Mo.App.E.D.2003). We do not weigh the evidence, but rather merely determine whether there was sufficient proof, including any incriminating evidence developed during the defendant's case, from which the trial court could reasonably have found the defendant guilty. *State v. Villa–Perez*, 835 S.W.2d 897, 900 (Mo. banc 1992); *State v. Rivers*, 554 S.W.2d 548, 550 (Mo.App. 1977); *see also State v. Jones*, 296 S.W.3d 506, 509–10 (Mo.App.E.D.2009) ("The court does not act as a 'super juror' with veto powers over the conviction, but rather gives great deference to the trier of fact.").

### Analysis

#### Point I—First–Degree Robbery and ACA

Defendant was tried and convicted of first-degree robbery and ACA, via accomplice liability. "The law of accessory liability emanates from statute, as construed by the courts." *State v. Barnum*, 14 S.W.3d 587, 590 (Mo. banc 2000). Although Missouri at one time made a distinction between principals and accessories to crime, Missouri has since eliminated such a distinction with respect to accom-

plice liability; therefore, all persons who act in concert to commit a crime are equally guilty. *State v. Wurtzberger*, 40 S.W.3d 893, 895 (Mo. banc 2001); *see also State v. Young*, 369 S.W.3d 52, 55 (Mo.App.E.D. 2012). Section 562.041.1(2) provides that a person is criminally responsible for the conduct of another when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."

■ Accordingly, "[t]o make a submissible case of accomplice liability, the State must show that the defendant associated himself with the venture or participated in the crime in some manner, but the State need not show that the defendant personally committed every element of the crime." *Young*, 369 S.W.3d at 55. Any evidence, either direct or circumstantial, demonstrating "affirmative participation" in the crime charged and committed is sufficient to support a conviction. *State v. Smith*, 108 S.W.3d 714, 719 (Mo.App.W.D. 2003). In determining whether the evidence is sufficient to support the jury's verdict, we consider each of the elements of the crime. *Smith*, 108 S.W.3d at 718.

First, pursuant to Section 569.020.1, a person commits the crime of first-degree robbery when he forcibly steals property and in the course therefore, he, or another participant in the crime:

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threaten the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Section 569.020.1. As such, a conviction for first-degree robbery in this case required the State to show Defendant, acting in concert with another, forcibly stole property from another while using or threatening the use of what appeared to be a deadly weapon. *Jones*, 296 S.W.3d at 510.

Second, to be found guilty of armed criminal action, there must be proof the defendant committed a "felony under the laws of this state by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon[.]" Section 571.015.1. Thus, the State was required to show Defendant, acting in concert with another, committed first-degree robbery with the assistance of a deadly weapon. *Jones*, 296 S.W.3d at 510.

■ Defendant argues there was insufficient evidence to convict him of the crimes charged because: (1) the State failed to prove the identity of the second person in order to establish Defendant acted in concert with another; and (2) the State failed to prove the item allegedly placed against Victim's head was a dangerous weapon or instrument. Although Defendant admitted to stealing the victim's laptop, cell phone, credit cards and cash, Defendant testified that he entered the antique shop unaccompanied and stole the property without a dangerous instrument or weapon.

Conversely, Victim testified that two individuals entered his business and the "short one"—Unidentified Accomplice—pointed a black gun at him. While Unidentified Accomplice pointed a gun at Victim, Defendant pointed a hard object to the back of Victim's head, which Victim assumed to be a gun. Although Victim never saw the object pointed at his head by Defendant, Victim believed the object to be a gun. Furthermore, Victim was able to identify Defendant in a photo-

graphic-lineup and in court as one of the perpetrators who robbed him.

This Court, on appeal, does not weigh the evidence adduced during trial, but rather accepts as true all of the evidence favorable to the State, including all favorable inferences drawn therefrom, and we disregard all contrary evidence and inferences. In light of this standard of review, Victim's testimony is sufficient evidence from which rational jurors could have found beyond a reasonable doubt that Defendant was guilty of first-degree robbery and ACA. *State v. Taylor*, 373 S.W.3d 513, 518 (Mo.App.E.D.2012) (the jury resolves all conflicts of evidence and this Court does not second guess the jury's judgment); *State v. Burnett*, 520 S.W.2d 148, 149 (Mo.App.1975) (conflicts in testimony of State's witness and evidence offered by the defendant are proper questions for the jury). Accordingly, Victim's testimony standing alone was sufficient evidence for the jury to find, beyond a reasonable doubt, that Defendant acted in concert with another and either Defendant or Unidentified Accomplice (or both) facilitated the robbery with the use of a deadly weapon or instrument. *See State v. Shaw*, 602

S.W.2d 17, 19 (Mo.App.E.D.1980) ("Ordinarily, the testimony of a single witness may be considered sufficient although the testimony may be inconsistent."). The lack of corroboration of Victim's testimony goes only to the weight of the evidence and Victim's credibility, matters which are solely within the purview of the jury. *State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011) ("It is the job of the jury to determine the credibility of witnesses, resolve conflicts in testimony, and weigh evidence."); *see also State v. Tressler*, 503 S.W.2d 13, 17 (Mo.1973) (reaffirming the principle that a conviction can *even* be based upon the uncorroborated testimony of an *accomplice* ). Thus, although Victim is the only witness who could testify that Defendant and Unidentified Accomplice robbed him with a deadly weapon or weapons, that testimony was sufficient evidence.[2]

■ Moreover, because there was sufficient evidence Defendant acted in concert with another individual, whether Defendant was in possession of a deadly weapon or instrument is immaterial because Victim testified that Unidentified Accomplice utilized a gun to carry out the robbery[3]—a

---

**2.** It should be noted that Victim's testimony is not entirely uncorroborated as Defendant's fingerprints were found at the scene of the crime.

**3.** While Defendant's possession of a gun, or lack thereof, is immaterial, this Court finds there was sufficient evidence that Defendant, himself, threatened the use of what appeared to be a gun. The "thrust of the robbery first degree statute is to encompass those situations where the victim is placed *either* in unusually great danger *or* fear of bodily injury." *State v. Humphrey*, 789 S.W.2d 186, 189 (Mo.App.E.D.1990) (citing *State v. Steffenhagen*, 671 S.W.2d 344, 346 (Mo.App.E.D.1984)) (emphasis in original). For instance, under subparagraph (3) of Section 569.020 the crime of robbery in the first degree "involves not only conduct creating actual danger but also conduct which creates the fear of injury

to the victim from the instrumentality being used," *Steffenhagen*, 671 S.W.2d at 346, and subparagraph (4) "is concerned with the fear generated by that which may be neither a deadly weapon nor a dangerous instrument but which is utilized so as to give the appearance of being such." *Humphrey*, 789 S.W.2d at 189. Accordingly, "[r]obbery in the first degree may be found where the victim is in fear even though there was no real possibility of injury, such as ... where a robber falsely pretended to be pointing a gun supposedly concealed under his clothing." *State v. Collins*, 567 S.W.2d 144, 146 (Mo.App.1978). "The threat to use the object to produce harm transmogrifies it into a dangerous instrument." *State v. Archer*, 814 S.W.2d 315, 317 (Mo.App.S.D.1991).

Here, the evidence presented established Defendant threatened the use of *what ap-*

fact the jury was free to believe or disbelieve. Again, this fact alone was sufficient to find Defendant guilty of both robbery in the first degree and ACA. *State v. Shockley,* 98 S.W.3d 885, 890 (Mo.App.S.D.2003) ("Under accomplice liability, the evidence need not show that Defendant personally committed every element of a crime."); *State v. Thomas,* 387 S.W.3d 432, 437 (Mo. App.W.D.2013) ("Because Missouri has eliminated the distinction between principals and accessories, all person who act in concert to commit a crime are equally guilty.").

Defendant's assertion that the State is obligated to establish the identity of the accomplice or accomplices is without support. Defendant cites to no case law, and independent review by this Court finds none. Rather, contrary to Defendant's contention, the inference of guilt is consistent with, and flows naturally and logically from the evidence presented at trial that Defendant acted in concert with another to forcibly steal property with the use of a deadly weapon.

Viewed in the light most favorable to the verdict, and considering all the evidence and inferences favorable to the verdict, we find the State presented sufficient evidence from which rational jurors could have found beyond a reasonable doubt that Defendant was guilty of first-degree robbery and ACA. Point I is denied.

### Point II—Kidnapping

Defendant asserts in his second point on appeal that the trial court erred in denying his motion for judgment of acquittal at the close of all evidence with regard to the kidnapping charge because Defendant's ac-

tions did not constitute a separate offense of kidnapping, in that there was no increased risk of harm or danger to Victim and that the evidence failed to prove Victim was confined for a "substantial period."

In Missouri, pursuant to Section 565.110.1, kidnapping has been statutorily prescribed as the following:

1. A person commits the crime of kidnapping if he or she unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of

   (1) Holding that person for ransom or reward, or for any other act to be performed or not performed for the return or release of that person; or

   (2) Using the person as a shield or as a hostage; or

   (3) Interfering with the performance of any governmental or political function; or

   (4) Facilitating the commission of any felony or flight thereafter; or

   (5) Inflicting physical injury on or terrorizing the victim or another.

In the present case, the State charged Defendant with kidnapping in violation of subdivision (4). *See, supra,* Section 565.110.1(4). Under this subdivision, the State is required to prove three different and distinct elements: (1) the defendant unlawfully removed or confined the victim for a substantial period of time, (2) without the victim's consent, and (3) such removal or confinement was for the purpose of

---

*peared* to be a deadly weapon or dangerous instrument. *See* Section 569.020.1(4). It does not matter that Victim's belief that the object pressed against his head by Defendant may not have actually been a gun, it only matters whether that Victim reasonably be-

lieved there to be a gun pointed at his head that could cause bodily injury. Therefore, there was sufficient evidence Defendant, himself, consciously threatened the use of an object that could have been, and was, perceived as a deadly weapon or instrument.

facilitating the commission of any felony or flight thereafter. *Id.; State v. Brown,* 824 S.W.2d 924, 927 (Mo.App.W.D.1992); *see also* MAI–CR 3d 319.24.

### A. Defendant's Confinement of Victim Was for a "Substantial Period."

First, Defendant contends that Victim's confinement was not for a "substantial period" because Victim testified that he was able to withdraw from confinement and exit the store for help after only one or two minutes from the time Defendant and Unidentified Accomplice fled.

From the outset, we note that "substantial period" is not defined in the statute and no Missouri court has expressly addressed the *length of time* a victim must be confined in order for there to be a submissible case of kidnapping pursuant to Section 565.110. *See State v. Keeler,* 856 S.W.2d 928, 930 n. 5 (Mo.App.S.D.1993) ("we need not—and do not—offer an opinion about what span of time would constitute 'a substantial period' for purposes of § 565.110.1."); *State v. Belcher,* 805 S.W.2d 245, 251 (Mo.App.S.D.1991) ("we do not attempt to state how much movement or confinement is necessary as a proper basis for a charge of kidnapping"). Ostensibly, Defendant requests this Court draw a "bright-line" rule as to the length or duration of confinement necessary to establish kidnapping pursuant to Section 565.110; Defendant seeks a quantitative analysis of the kidnapping in order to determine if the confinement of a victim was for a "substantial period." However, the statute does not so require, and this Court declines to do so.

Under Missouri precedent, the offense of kidnapping can only be sustained where the movement or confinement of the victim is more than "merely incidental" to another offense. *State v. Williams,* 860 S.W.2d 364, 366 (Mo.App. E.D.1993). Determining whether a defen-

dant's movement or confinement of his victim is merely incidental to another offense or is sufficient to constitute the offense of kidnapping requires this Court to focus upon whether "there was any increased risk of harm or danger to the victim from the movement or confinement that was not present as the result of the other offense." *Id.* Accordingly, it logically follows, confinement of a victim which increases the risk of harm not normally present in the commission of a crime is not merely incidental to that crime. *State v. Brown,* 824 S.W.2d 924, 927 (Mo.App. W.D.1992) ("where the removal or confinement adds a new danger of injury or death to that already present from the other offense ... that constituent element of kidnapping is proven"). Therefore, the gravamen of the crime of kidnapping premised upon confinement, is the increased risk of harm caused to the victim, and the length or duration of confinement is just one factor in determining whether there was an increased risk of harm (i.e., the lengthier the confinement, the greater opportunity there be for an increased risk of harm). *See State v. Morrow,* 941 S.W.2d 19, 21 (Mo.App.W.D.1997) ("Kidnapping requires either confinement or movement and the amount necessary will vary according to the circumstances of each case."); *see also Brock v. Denney,* No. 4:06CV1103TCM, 2009 WL 3228694, *14 (E.D.Mo. Sept. 30, 2009) ("it was the increase of harm or danger to the victim, rather than the length of the period of confinement, that determined whether or not the confinement was incidental to another offense"). As such, determination of whether a victim's confinement was for a "substantial period" is necessarily connected to whether the confinement increased the risk of harm to the victim. *See, e.g., State v. Lint,* 657 S.W.2d 722, 725 (Mo. App.E.D.1983) (a defendant may be con-

victed of both kidnapping and another substantive crime if the victim was confined to an extent exceeding that which was necessary to accomplish or complete the other crime).

For example, in *State v. Morrison*, 980 S.W.2d 332 (Mo.App.E.D.1998), a rogue insurance agent attempted to con an elderly client into endorsing blank checks. *Id.* at 333. When the client refused, the insurance agent and his accomplice forced the client to sign two blank checks. *Id.* After the client signed the blank checks, the insurance agent and his accomplice tied the client to her chair with electrical tape, disconnected her phone and fled. *Id.* at 333–34. Fortunately, the client was able "to free herself within minutes" after the defendant left because the electrical tape was loose. *Id.* at 334. The insurance agent was subsequently charged and a convicted, *inter alia*, for kidnapping. *Id.* at 333. On appeal, the insurance agent argued that the trial court erred in overruling his motion for judgment of acquittal because the State failed to produce sufficient evidence that the client was confined for a "substantial period." *Id.* This Court, stopping short of expressly addressing the length of time necessary for kidnapping based upon confinement, upheld the insurance agent's conviction, finding the State presented sufficient evidence for the jury to conclude that the client was confined for a substantial period. *Id.* at 333–34.

■ This interpretation of Section 565.110 and our election not to draw a "bright-line" rule as to the duration of

confinement is in accord with and effectuates the section's legislative intent—this Court's primary duty when interpreting a statute. *State v. McLaughlin*, 265 S.W.3d 257, 267 (Mo. banc 2008). While, unfortunately, Section 565.110's legislative intent is not clearly ascertainable by its plain and ordinary language due to the various definitions sanctioned by the term "substantial,"[4] this Court is not without principles needed to ascertain and effectuate the legislative intent. *See State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006) ("If statutory language is subject to more than one reasonable interpretation, then the statute is ambiguous."); *City of Univ. City v. AT & T Wireless Serv.*, 371 S.W.3d 14, 19 (Mo.App.E.D.2012) ("The language of a statute is ambiguous when a key term is left undefined, requiring the court to fill in the term."). Often, when a statute is ambiguous, legislative intent can be determined by tracing the "historical development of the legislation" and examining the purpose, objective and policy behind the statute. *State ex rel. Lebeau v. Kelly*, 697 S.W.2d 312, 314–15 (Mo.App.E.D.1985).

The development and roots of Section 565.110 can be traced back to the Model Penal Code ("MPC"). *Spier v. State*, 174 S.W.3d 539, 541 (Mo.App.E.D.2005). Model Penal Code § 212.1, upon which Section 565.110 is patterned, reads, in pertinent part, as follows:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where

---

4. The dictionary definition of "substantial," in pertinent part, reads: "1 a: consisting of or relating to substance[;] b: not imaginary or illusory: REAL, TRUE; c: IMPORTANT, ESSENTIAL ... 5 a: possessed of means: WELL-TO-DO [;] b: considerable in quantity: significantly great <earned a *substantial* wage>[.]" MERRIAM-WEBSTER ONLINE DICTIONARY. 2013. http://www.merriamwebster.com (18 Aug. 2013).

As made apparent by these definitions, "substantial" sanctions two possible definitions: (1) quality (i.e., the nature and method regarding the period of confinement); and (2) quantity (i.e., the duration of confinement). *See, e.g., State v. Hofland*, 58 A.3d 1023, 1030 (Me.2012) (" 'substantial period' is open to multiple interpretations").

he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

(a) to hold for ransom or reward, or as a shield or hostage; or

(b) to facilitate commission of any felony or flight thereafter; or

(c) to inflict bodily injury on or to terrorize the victim or another. . . .

Model Penal Code § 212.1 (1962); *see also Flores v. State,* 186 S.W.3d 398, 400 (Mo. App.E.D.2006). While § 212.1 of the MPC was not adopted by the Missouri Legislature *in toto,* the "substantial period" limitation remained intact.[5] As such, the history of the crime of kidnapping and the comments to the Model Penal Code provide this Court guidance in gleaning the legislative intent behind the "substantial period" limitation under Section 565.110. *State v. Slavens,* 190 S.W.3d 410, 413 (Mo. App. S.D.2006).

Historically, a kidnapping charge was added or "pyramided" upon the underlying offense, in order to obtain a more severe punishment, although the confinement or asportation was merely incidental of the underlying offense. *A Rationale of the Law of Kidnapping,* 53 Colum. L.Rev. 540, 556 (1953) ("A salient consideration is that virtually all conduct within the scope of kidnapping law is punishable under some other criminal provision: e.g., extortion, homicide, assault, rape, robbery. . . ."). Thus, in proposing and enacting Model Penal Code § 212.1, the American Law Institute ("A.L.I.") deemed it "desirable to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape," because the broad scope of kidnapping had given rise to serious injustice. A.L.I., Model Penal Code § 212.1, comment 1 to Tentative Draft No. 11 at 13 (1960). Accordingly, the purpose in including the "substantial period" limitation under § 212.1 of the MPC was "to avoid application of the kidnapping law to detentions merely incidental to rape and other crimes of violence." *Id.* at 16. If the "substantial period" limitation was excluded, the A.L.I. postulated that kidnapping's breadth would be too broad and would punish those that were, in fact, not guilty of kidnapping:

Thus, for example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnapping as well as robbery. This reasoning raises the possibility of cumulative penalties or of higher sanctions for kidnapping, even though the 'removal' of the victim to another place was part and parcel of the robbery and not an independent wrong. . . . Definition of kidnapping to exclude such cases is a task of special subtlety for, unless particular care is taken, trivial aspects of robbery, rape, or some other crime will end up classified as the most serious version of kidnapping.

A.L.I., *Model Penal Code and Commentaries Part II,* comment 2 to § 212.1 at 220–21 (1980).

Specifically excluded from the MPC § 212.1 and its accompanying comments was a definition for "substantial period"

---

5. The most obvious deviation between Section 565.110 and Model Penal Code § 212.1 was the removal of the "substantial distance" limitation. *Compare* Section 565.110 *with* Model Penal Code § 212.1. The effect of this departure was thoroughly addressed in *State v. Woodland,* 768 S.W.2d 617, 619 (Mo.App.E.D. 1989) ("The Model Penal Code, in pertinent part, requires removal 'a *substantial distance* from the vicinity where he found,' while our [Missouri] statute requires only removal 'from the place where he is found.' ") (emphasis in original).

alluding to the confinement's duration or length of time. Thus, while the A.L.I. sought to limit the breadth of the offense of kidnapping, it did not seek to do so solely because the duration of confinement was brief. *State v. La France*, 117 N.J. 583, 569 A.2d 1308, 1312 (1990) ("... the structure of the [MPC] provides the definition of the movement or restraint that is not merely incidental to the underlying substantive crime. We realize that there is no mathematical certainty to the definitions of movement, nor to the distance and duration requirements ... [and] judicial attempts to draw mathematical lines have been equally unavailing.") Rather, the test for determining whether kidnapping, premised upon confinement, occurred, pursuant to MPC § 212.1, is whether the confinement is merely incidental to the commission of the underlying crime; duration of confinement is a factor in so determining.

Consistent with the MPC, in proposing and enacting the Missouri kidnapping statute, the Comment to the 1973 Proposed Code of Section 565.110 also avoids defining "substantial period" in terms of time. *See* Section 565.110, Comment to the 1973 Proposed Code. Instead, Comment to the 1973 Proposed Code also focuses upon confinement exceeding that which is merely incidental to the commission of another offense. *Id.* However, the Comment to the 1973 Proposed Code explicitly notes the amount of confinement necessary "cannot be defined precisely as it will vary according the circumstances." *Id.* Clearly, the legislative history of Section 565.110 coupled with its derivation from the Model Penal Code manifest a legislative intent to punish as kidnapping those instances where confinement has a criminal significance above and beyond that necessary to consummate some underlying offense such as robbery.

Furthermore, courts in other jurisdictions, considering kidnapping statutes borrowed from the § 212.1 of the MPC and comparable to Section 565.110, have agreed with this Court's interpretation that the phrase "substantial period" expresses an intent the duration of confinement is not itself an integral part, even though the duration of confinement may bear on whether the confinement was "merely incidental."

For instance, the Supreme Court of Vermont, in *State v. Carrasquillo*, 173 Vt. 557, 795 A.2d 1141 (2002), confronted the "substantial period" limitation of their own kidnapping statute. *Id.* at 1145. In that case, the defendant, a prison inmate, directed his cellmate to hold a nurse at knifepoint to facilitate the defendant's escape from his cell. *Id.* The incident lasted between two and ten minutes. *Id.* Thereafter, the State of Vermont charged defendant, in part, with kidnapping, via accomplice liability. *Id.* at 1143. At the close of all evidence, defendant moved for the trial court to enter a judgment of acquittal on the basis that the nurse was not confined or restrained for a "substantial period." *Id.* at 1145. After denying defendant's motion, the jury returned a guilty verdict. *Id.* at 1143.

On appeal, the Supreme Court of Vermont affirmed the defendant's kidnapping conviction, holding that the question of "[w]hether a confinement is sufficiently substantial to support a kidnapping conviction depends upon a 'qualitative' analysis of the factors surrounding the confinement[,]" including:

(1) whether the detention significantly increases the dangerousness or undesirability of the defendant's behavior, (2) whether the detention occurred during the commission of a separate offense, and (3) whether the detention created a significant danger to the victim indepen-

dent of that posed by the separate offense[.]

*Id.* at 1146. In so sustaining defendant's conviction, that court reasoned that, although the confinement lasted only a few minutes, there was sufficient evidence the confinement of the nurse was "substantial" because the nurse was restrained with a weapon to her throat during a highly volatile and dangerous situation, increasing the likelihood of harm to the nurse. *Id.* at 1145–46; *see also State v. Jones,* 190 Vt. 586, 44 A.3d 148, 152–53 (2011).

Analogously, the Supreme Court of New Jersey held that one is confined for a "substantial period" if that confinement

'is criminally significant in the sense of being more than merely incidental to the underlying crime,' and that determination is made with reference not only to the duration of the confinement, but also to the 'enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others]. That enhanced risk must not be trivial.'

*La France,* 569 A.2d at 1313 (quoting in part *State v. Masino,* 94 N.J. 436, 466 A.2d 955, 961 (1983)); *see also State v. Purnell,* 394 N.J.Super. 28, 925 A.2d 71, 87 (2007) ("A substantial period of time is not defined in seconds or minutes.").

Similarly, several other jurisdictions which have analyzed the meaning of "substantial period" under similar statutes have held the meaning of the term is not solely a "quantity" inquiry, but rather a "qualitative" inquiry upon other circumstances surrounding the confinement—regardless of the duration of confinement—such as whether the confinement was independently criminally significant or whether the confinement increased the risk of harm to the victim. *See, e.g., Com. v. Hughes,* 264 Pa.Super. 118, 399 A.2d 694, 698 (1979) ("what is a 'substantial period' in time can depend on the mental state of the victim");

*Com. v. Markman,* 591 Pa. 249, 916 A.2d 586, 600 (2007) ("However, the determination of a substantial period subsumes not only the exact duration of confinement, but also whether the restraint, by its nature, was criminally significant in that it increased the risk of harm to the victim.").

■ Turning now to the facts of this case, we find sufficient evidence existed for the trial court to deny Defendant's motion of acquittal because Defendant confined Victim for a "substantial period." Contrary to Defendant's suggestion, confining another person is neither an element nor a necessary component of robbery in the first degree and it is reasonable to construe the kidnapping statute to cover the behavior at issue here—being tied does not naturally accompany the crime of robbery and is more than "merely incidental." Defendant testified that he tied Victim's hands and ankles together. From this testimony, a juror could have reasonably found that Victim was to be confined for a substantial period to facilitate Defendant's and Unidentified Accomplice's flight from the scene. Merely because Victim was, in fact, *able* to escape confinement *after* only a few minutes does not eliminate the possibility of increased risk of harm to Victim caused by the confinement. *See State v. Bess,* 73 S.W.3d 791, 794 (Mo.App.E.D. 2002) (analysis is not on the actual injury, but on the *increased risk* to the victim). The confinement period was sufficient to cause an increased risk of harm due to the possibility that the victim may have been, for instance, unable to disentangle the knot holding his feet together. *See* A.L.I., *Model Penal Code and Commentaries Part II,* comment 2 to § 212.1 at 227 (1980) ("The underlying perception is that kidnapping in order to commit or escape from a serious crime is especially likely to create risk to the victim."). The brevity of Victim's confinement does not negate the

fact that Victim's confinement was not incidental to the crime of robbery and caused an increased risk of harm to Victim.

**B. Defendant's Confinement Increased the Risk of Harm or Danger to Victim.**

■ Second, Defendant argues that the confinement of Victim did not increase the risk of harm or danger to Victim. As heretofore indicated, this argument is clearly refuted by the record.

Here, sufficient evidence existed because the forcible confinement of Victim was not merely incidental to the first-degree robbery of Victim, but rather increased the risk of harm to Victim. First, the record reveals that Defendant *forcibly* confined Victim by tying his hands and ankles in order to prevent Victim from leaving the store or becoming visible to the public outside the store and also to facilitate Defendant's flight. Defendant, thereby, increased his ability to prolong his first-degree robbery. *State v. Jackson,* 703 S.W.2d 30, 33 (Mo.App.E.D.1985). Second, Defendant's actions to confine Victim to the inside of the store made Victim's ability to report the crime more difficult, and made Defendant's criminal activity less observable to the public. *Id.* In fact, the confinement and isolation of Victim also decreased the chances of witnesses and the immediate capture of the perpetrators, including Defendant. *State v. Erby,* 735 S.W.2d 148, 149 (Mo.App.E.D. 1987). In sum, the evidence established that Victim's confinement made Victim's ability to report the crime more difficult and Defendant's criminal activity less visible. *See, e.g., State v. Brock,* 113 S.W.3d 227, 231–32 (Mo.App.E.D.2003) (finding that the victim's confinement in an apartment increased the risk of danger to the victim because it made her escape more difficult, and the criminal's activity less visible); *Morrow,* 941 S.W.2d at 21 (find-

ing that the moving of the victim, at gun point, from the front yard to inside the house created greater risk of harm to the victim and the perpetrators "[t]ying up the victims amounted to confinement designed to facilitate the commission of the robbery"). Thus, there was sufficient evidence to support defendant's conviction of kidnapping. Point II is denied.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

CLIFFORD H. AHRENS and GLENN A. NORTON, JJ., concur.