

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103082 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| v. | ) | |
| | ) | Honorable Thomas J. Frawley |
| KAVIN RACHEL, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: November 8, 2016 |

## Introduction

Kavin Rachel (Appellant) appeals from the trial court's judgment entered upon a jury verdict acquitting him of first-degree statutory rape (Count I), and convicting him of three separate counts of first-degree statutory sodomy (Counts II, III and IV). We affirm.

## Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following.

In 2011, when Victim was three years old, her mother (Mother) and Appellant dated for a few months and then broke up. In January of 2013, Mother and Appellant resumed their relationship and Appellant moved into Mother's house. Appellant lived in the house for six months, from January through June of 2013. Also living in Mother's house were Victim, who was five years old at the time, her two older brothers, and her two older male cousins. Mother shared her bedroom on the second floor with Appellant, Victim's bedroom was next door to

Mother's, and Victim's brothers and cousins slept in the basement. Mother worked as a certified nursing assistant (CNA) from 2:30 p.m. until 11:00 p.m., while Appellant worked from about 4:00 or 5:00 a.m. until 5:00 p.m. After work, Appellant would go to the house, and was the only adult there until Mother arrived home after she finished her work at 11:00 p.m.

On June 18, 2013, Victim's oldest brother told Mother she needed to talk to Victim, who was outside playing with some neighborhood kids. When Mother approached Victim, Victim started crying and told Mother Appellant had touched and licked her "down there" between her legs. Mother took Victim to the hospital, where she saw a doctor and spoke to social worker Karen Gudic (Gudic). Victim told Gudic Appellant had put his hands between her legs, pointing to her genital area. Victim also told Gudic Appellant had "licked her spot." When Gudic asked Victim to point to her "spot," Victim grabbed her shorts and underwear, pulled them to the side, showed Gudic her vaginal area, and said "right there."

That night, Mother called the police when Appellant arrived home.

On June 19, 2013, Victim was interviewed by forensic interviewer Diarra Cross-Davis (Cross-Davis) at the Children's Advocacy Center (CAC). A video recording of this interview was admitted into evidence at trial and played for the jury. The video recording disclosed the following. Cross-Davis asked Victim why she had gone to see the doctor. Victim replied, "It's a bad answer." Victim told Cross-Davis Appellant had put his hands between her legs and had touched her "privacy," which she indicated was her vaginal area. Victim stated Appellant touched her with his hand on her skin and had put his hand "in there," "all the way between there," and it "felt bad." Victim pointed to her groin and said Appellant had "already" licked her before that. This had happened in Mother's bedroom. When Cross-Davis asked Victim what Appellant was doing when he had his hand between her legs, Victim wiggled her fingers. Victim

2

also stated Appellant had put his privacy in her privacy. Victim said Appellant had touched her between her legs in Victim's bedroom.

Mother testified she had noticed Victim had been keeping her distance from Appellant and resisted hugging him for about a month prior.

The State charged Appellant with one count of first-degree statutory rape (Count I) and three counts of counts of first-degree statutory sodomy (Counts II, III, and IV), for conduct involving Victim, a child less than 12 years old, that occurred between January 1 and June 18, 2013. Counts II and IV alleged Appellant put his fingers in Victim's genitals while in Victim's mother's bedroom (Count II) and Victim's bedroom (Count IV), and Count III alleged Appellant put his mouth on Victim's genitals while in Victim's mother's bedroom.

These counts were tried to a jury from January 13 through January 15, 2015. On January 15, 2015, the jury acquitted Appellant of Count I, the statutory rape count, and convicted him of Counts II, III, and IV, the sodomy counts. The trial court sentenced Appellant to 15 years on each count, to run concurrently. This appeal follows. Additional facts pertinent to the points on appeal will be adduced as necessary.

Points on Appeal

In his first point on appeal, Appellant claims the trial court abused its discretion in failing to declare a mistrial, or in the alternative, in failing to hold a full investigative hearing based on witness misconduct, because Deputy Nathan Friar (Deputy Friar) testified he heard Mother tell Victim in the witness room "to go out there and say exactly what I told you to say when you get on the stand and nothing else." Appellant contends Deputy Friar's testimony indicated Victim's trial testimony in which she stated Appellant raped her was coached, resulting in the improper admission of testimony that affected the jury's verdict.

In his second point, Appellant asserts the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support his conviction of Counts II and IV, in that the State failed to prove beyond a reasonable doubt he committed the charged act of deviate sexual intercourse of putting his fingers in Victim's genitals while in her mother's bedroom (Count II) and while in Victim's bedroom (Count IV) because Victim repeatedly indicated in her CAC interview Appellant had touched her "on her privacy," and when asked to demonstrate how Appellant had touched her, spread the fingers of her hand and moved them in a manner imitating spider legs or the light playing of fingers on piano keys.

In his third point, Appellant maintains the trial court plainly erred in submitting verdict directors, Instructions 6, 7, and 8 on Counts II, III, and IV, because they failed to sufficiently differentiate between the multiple sex acts underlying each count, thus failing to ensure the jury reached a unanimous verdict based on the same acts of deviate sexual intercourse.

In his fourth point, Appellant contends the trial court plainly erred in submitting verdict directors, Instructions 6 and 8 on Counts II and IV, because they improperly hypothesized Appellant put his fingers in Victim's genitals when the evidence did not support he had committed such an act.

Standards of Review

The decision whether to grant or deny a mistrial rests within the sound discretion of the trial court and on appeal, the trial court's decision will not be disturbed absent an abuse of discretion. State v. Fassero, 256 S.W.3d 109, 115 (Mo.banc 2008).

This Court reviews the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case. State v. Sistrunk, 414 S.W.3d 592, 596 (Mo.App. E.D. 2013). This Court will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable

4

persons could have found the defendant guilty of the charged offense. Id. In so reviewing, this Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn therefrom, whereas all contrary evidence and inferences are disregarded. Id.

An unpreserved claim of error can be reviewed only for plain error, which requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error. State v. Celis-Garcia, 344 S.W.3d 150, 154 (Mo.banc 2011). For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict. Id.

Discussion

Point I

Appellant contends Victim's trial testimony in which she stated Appellant raped her was coached by Mother. After the jury retired to deliberate on January 15, 2015, Deputy Friar informed the trial court he heard Mother tell Victim before Victim was brought into court to testify to "say exactly what I told you to say when you get on the stand and nothing else." Deputy Friar told the trial court these were Mother's exact words. Appellant moved for a mistrial, or to hold an evidentiary hearing on the matter. The trial judge denied the motion for a mistrial, but agreed to hold an evidentiary hearing post-verdict, with another judge conducting the hearing and overseeing it to determine whether there was witness misconduct, since Deputy Friar was the trial judge's deputy. On January 15, 2015, the jury returned its verdict of not guilty on Count I, and guilty on Counts II, III and IV.

Appellant presented the issues he believed were raised by Deputy Friar's disclosure of Mother's statement to Victim in points 5, 6, 7, and 8 of his Motion for New Trial to be considered by Judge Michael K. Mullen. The State filed its response. On May 14, 2014, the

5

evidentiary hearing on points 5, 6, 7, and 8 was held. After hearing evidence and argument, Judge Mullen took the matter under submission. The next day, Judge Mullen issued the following judgment, which stated in pertinent part:

> [Appellant's] motion for a new trial…is called for hearing on points 5, 6, 7 and 8 concerning the allegation that the victim in this case was impermissibly coached by her mother prior to the victim testifying in this case. Evidence [is] adduced through testimony of Sheriff's Deputy Nathan Friar, BACA member Randal Carter, two members of the Circuit Attorneys Victim Assistance Program, and the victim's mother…. The Court also received into evidence [Appellant's] Exhibits A and B. Upon the conclusion of the testimony and upon the reading of the exhibits, the Court is not persuaded that the victim in this case was impermissibly coached by her mother.
> Therefore, [Appellant's] Motion for a New Trial…is denied as to points 5, 6, 7, and 8. Cause returned to Division 22 for further proceeding.

Appellant maintains Deputy Friar's account of what Mother said to Victim showed Victim's trial testimony was "coached, and thus possibly perjured," constituted witness misconduct, and the "State did not prove otherwise." However, the State did prove otherwise. An evidentiary hearing was held in front of Judge Mullen. Testimony was elicited from Mother; Deputy Friar; Randal Carter (Carter), President of the East Missouri Chapter of Bikers Against Child Abuse (BACA); Maggie Elking (Elking), a Victim Advocate from the Attorney General's Victim Services Office; and Becky Schulz (Schultz), Child Advocate in the Victim Services Office. All of these individuals were in the witness room at the time the statement was allegedly made. The room is small. None of the witnesses corroborated what Deputy Friar heard. Mother steadfastly denied saying it. Mother stated she only told Victim to be a big girl and tell the truth. Carter, Elking, and Schultz all testified they were attentive to Victim and what was going on in the witness room and they never heard Mother say anything to the effect of what Deputy Friar alleged.

6

After taking the matter under submission, Judge Mullen considered the matter and concluded the State demonstrated Victim was not improperly coached by Mother and Victim's testimony was not perjured. Judge Mullen was able to consider the statement made in the context of the circumstances as recounted by other individuals in the witness room who were there prior to Deputy Friar's arrival. As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony. Zink v. State, 278 S.W.3d 170, 192 (Mo.banc 2009). On appeal, the credibility of witnesses is generally a matter for the trial court's determination to which an appellate court gives considerable deference. State v. Rousan, 961 S.W.2d 831, 845 (Mo.banc 1998).

We also note Appellant was acquitted by the jury of the statutory rape charge – the only rape charge. The only testimony Victim gave on the stand regarding Appellant's actions against her as charged by the State was her statement that he "raped" her. Appellant was acquitted of that charge. As such, it is unclear what prejudicial effect Victim's alleged perjured testimony had on Appellant.

Based on the foregoing, Appellant's request for remand for an evidentiary hearing on the matter is denied as moot, because an evidentiary hearing was in fact held. Further, the trial court did not abuse its discretion in denying his motion for mistrial because the court, as trier of fact and determiner of credibility in this matter, determined there was no witness misconduct meriting same. Point I is denied.

Points II and IV

In his second point, Appellant asserts he was entitled to an acquittal on Counts II and IV because the State failed to prove beyond a reasonable doubt he committed the charged act of deviate sexual intercourse of putting his fingers *in* Victim's genitals while in her mother's

7

bedroom (Count II) and while in Victim's bedroom (Count IV). In his fourth point, Appellant contends the trial court plainly erred in submitting verdict directors, Instructions 6 and 8 on Counts II and IV, because they improperly hypothesized Appellant put his fingers *in* Victim's genitals when the evidence did not support he had committed such an act.

In support of his assertions, Appellant argues Victim only stated in her CAC interview that Appellant had touched her "*on* her privacy." Appellant also maintains Victim spread and wiggled her fingers when asked by Cross-Davis to demonstrate how Appellant had touched her on her privacy, contravening the charge Appellant put his fingers *into* her vagina.

However, Victim also said to Cross-Davis that Appellant's hand was on her skin and was "in there" and "all the way between there." Victim further told Cross-Davis Appellant's actions in doing this "felt bad," indicating his touch was more than a tap *on* the skin.

When a defendant challenges the sufficiency of the evidence to support a finding that sexual contact occurred, the issue is whether there is at least a reasonable inference that there was the touching of the genitals. State v. Greenlee, 327 S.W.3d 602, 619 (Mo.App. E.D. 2010). We accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and *disregard all evidence and inferences to the contrary*. Id. In his argument under Point II, Appellant is asking this Court to take into account all contrary inferences and disregard the evidence favorable to the jury's verdict. This we cannot do. In the instant case, we find the jury could have made a reasonable inference from the evidence presented, disregarding all contrary inferences, that Appellant put his finger in Victim's genitals to support a guilty verdict on Counts II and IV. See Greenlee, 327 S.W.3d at 619.

It follows from this finding that the verdict directors, Instructions 6 and 8 on Counts II and IV were not at variance with the evidence presented. Counts II and IV alleged hand-to-

8

genital contact in Mother's bedroom (Count II) and Victim's bedroom (Count IV). The verdict director for Count II (Instruction 6) required the jury to find that "on or between January 1, 2013 and June 18, 2013…the defendant put his fingers in [Victim]'s genitals while in her mother's bedroom." The verdict director for Count IV (Instruction 8) required the jury to find that "on or between January 1, 2013 and June 18, 2013…the defendant put his fingers in [Victim]'s genitals while in [Victim]'s bedroom." Because we find the jury could have made a reasonable inference from the evidence presented that Appellant put his finger in Victim's genitals, it follows the trial court did not plainly err in submitting verdict directors, Instructions 6 and 8 on Counts II and IV because they did not improperly hypothesize Appellant put his fingers in Victim's genitals when the evidence did not support he had committed such an act.

Based on the foregoing, Points II and IV are denied.

## Point III

In his third point, Appellant maintains the trial court plainly erred in submitting verdict directors, Instructions 6, 7 and 8 on Counts II, III, and IV because they failed to sufficiently differentiate between the multiple sex acts underlying each count, thus failing to ensure the jury reached a unanimous verdict based on the same acts of deviate sexual intercourse.

Counts II and IV alleged hand-to-genital contact in Mother's bedroom (Count II) and Victim's bedroom (Count IV). Count III alleged mouth-to-genital contact in Mother's bedroom. The evidence supporting these counts is as follows. During Victim's interview at the CAC with Cross-Davis, Victim used the word "privacy" to mean her genital area, or her vagina. Victim pointed to the area on her own body and correctly indicated it on an anatomically correct drawing of a female body. Victim said Appellant touched her "privacy," or genital or vaginal area, with his hand in Mother's bedroom. This incident was alleged in Count II (Count II – hand

9

to genital contact in Mother's bedroom). Victim followed up that statement with a declaration that Appellant had already licked her vaginal area during this incident. This act was alleged in Count III (Count III – mouth to genital contact in Mother's bedroom). Victim also said Appellant touched her when she was three years old and also when she was five years old. Victim said Appellant touched and licked her "privacy" more than one time. Victim stated Appellant touched her "privacy" also in Victim's bedroom (Count IV- hand to genital contact in Victim's bedroom) while her mother was at work. Victim said Appellant did not lick her "privacy" in Victim's room. (No charge alleged against Appellant for mouth to genital contact in Victim's room). These three charges were differentiated by the act described and the location where the act occurred. All three are different.

The verdict director for Count II (Instruction 6) required the jury to find that "on or between January 1, 2013 and June 18, 2013…the defendant put his fingers in [Victim]'s genitals while in her mother's bedroom."

The verdict director for Count III (Instruction 7) required the jury to find that "on or between January 1, 2013 and June 18, 2013…the defendant placed his mouth on [Victim]'s genitals while in her mother's bedroom."

The verdict director for Count IV (Instruction 8) required the jury to find that "on or between January 1, 2013 and June 18, 2013…the defendant put his fingers in [Victim]'s genitals while in [Victim]'s bedroom." [1]

---

[1] The full text of the verdict directors are as follows. The verdict director for Count II read as follows:
**Instruction 6 (Count II)**
As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
    First, that on or between January 1, 2013 and June 18, 2013, in the City of St. Louis, State of Missouri, [Appellant] put his fingers in [Victim's] genitals while in her mother's bedroom, and
    Second, that such conduct constituted deviate sexual intercourse, and
    Third, that at that time [Victim] was a child less than twelve years old, then you will find [Appellant] guilty under Count II of statutory sodomy in the first degree.

10

The jury was also instructed (Instruction 9) that the "defendant is charged with a separate offense in each of the four counts submitted to you. Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict for each count." The jury was also instructed: "Your verdict, whether guilty or not guilty, must be agreed to by each juror" and "the verdict must be unanimous."

Appellant claims this is a "multiple acts case," as was present in Celis-Garcia, 344 S.W.3d at 155-56, which "arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." The Missouri Supreme Court held in Celis-Garcia that a defendant's right to a unanimous jury verdict is violated when the verdict directors fail to separately identify specific instances of sodomy when the evidence shows multiple and discrete acts of hand-to-genital sodomy occurring in various rooms in the house. Id.

---

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Appellant] not guilty of that offense.

The verdict director for Count III read as follows:
**Instruction 7 (Count III)**
As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or between January 1, 2013 and June 18, 2013, in the City of St. Louis, State of Missouri, [Appellant] placed his mouth on [Victim's] genitals while in her mother's bedroom, and
Second, that such conduct constituted deviate sexual intercourse, and
Third, that at that time [Victim] was a child less than twelve years old, then you will find [Appellant] guilty under Count III of statutory sodomy in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Appellant] not guilty of that offense.

The verdict director for Count IV read as follows:
**Instruction 8 (Count IV)**
As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or between January 1, 2013 and June 18, 2013, in the City of St. Louis, State of Missouri, [Appellant] placed put [sic] his fingers in [Victim's] genitals while in [Victim's] bedroom, and
Second, that such conduct constituted deviate sexual intercourse, and
Third, that at that time [Victim] was a child less than twelve years old, then you will find [Appellant] guilty under Count IV of statutory sodomy in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Appellant] not guilty of that offense.

11

The same situation is not present here. The three Counts at issue, II, III and IV, are separate and distinct and are distinguished in the three verdict directors, Instructions 6, 7 and 8. Victim said Appellant licked her privacy in Mother's bedroom prior to touching her privacy with his hand. The acts described by Victim constitute the two incidents set forth in Counts II and III and instructed upon in Instructions 6 and 7. Victim also said Appellant touched her privacy with his hand in her own bedroom. This discrete act constitutes the third incident charged in Count IV and instructed upon in Instruction 8. There were three distinct incidents, separated into three different counts, distinguished by three different verdict directors. Appellant's right to a unanimous jury verdict on these three charges was not violated in this case. Consistent with Celis-Garcia, "the verdict director[s] specifically describ[ed] the separate criminal acts presented to the jury and the jury [was] instructed that it must agree unanimously that at least one of those acts occurred." Id. at 157.

Point III is denied.

### Conclusion

The trial court's judgment is affirmed.

_____
SHERRI B. SULLIVAN, P.J.

Roy L. Richter, J., and
Colleen Dolan, J., concur.

12