

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
 )
 Respondent, )
 ) **WD87347**
v. )
 ) **OPINION FILED:**
 ) **July 8, 2025**
DAVID SHAWN WILLIAMS, )
 )
 Appellant. )

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Kevin M.J. Crane, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge,
Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge

Mr. David Williams ("Williams") appeals the judgment of the Circuit Court of

Boone County, Missouri ("trial court"), following a jury trial, which convicted him of

one count of unlawful use of a weapon and one count of kidnapping in the third degree.

We affirm.

**Facts and Procedural History**[1]

On December 20, 2021, Williams was licensed as a surety recovery agent by the State of Missouri and worked on behalf of bail bond companies to ensure that defendants in criminal proceedings appeared in court in accordance with the conditions of their bail bonds. That day, Williams and his partner[2] were attempting to apprehend a criminal defendant ("Fugitive") after she failed to appear in court while on a $30,000 bond.

Williams and his partner learned that Fugitive was currently located at the home of her friend ("Resident"). To apprehend Fugitive, Williams enlisted the help of Fugitive's sister ("Sister"), who was a cosigner on the bond.

Williams, his partner, and Sister arrived outside Resident's home. Williams sent Sister to knock on the front door while he hid around the corner from the front door and while his partner watched the back door. After Sister knocked, Resident answered the door. Sister asked Resident if Fugitive was in the home, and Resident indicated that Fugitive was currently in the bathroom. At this time, Williams, wearing all-black

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Powell*, 707 S.W.3d 822, 824 n.1 (Mo. App. W.D. 2025) (quoting *State v. Boyd*, 597 S.W.3d 263, 267 n.2 (Mo. App. W.D. 2019)). "The jury, not the appellate court, is responsible for weighing the reliability and credibility of the witnesses . . . . The jury may choose to accept or reject all, some or none of the testimony of any witness[.]" *State v. Williams*, 608 S.W.3d 205, 209 (Mo. App. W.D. 2020) (alteration in original) (internal quotation marks and citations omitted).

[2] Pursuant to the directive of section 509.520.1(5) (Supp. IV 2024), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through December 20, 2021, unless otherwise indicated.

clothing, a bulletproof vest, and a weapons belt, came from around the corner of Resident's home.

Williams, without identifying himself or stating his reason for being on Resident's property without a warrant to search Resident's home, pushed Resident's door inward, moving himself inside the home. Resident attempted to push the door shut from the opposite side, but he was pushed back by the door until he was pinned between the door and an interior wall. Williams then drew his gun, placed it against Resident's head, and shouted at Resident to get on the floor. Resident put his hands up, announced his intent to retreat, and did so.

During the struggle at the door, Williams's partner heard the commotion and came from around the rear of the home to the front door. Williams told his partner to go inside the home to extract Fugitive from the bathroom. Williams's partner found that Fugitive had locked herself inside the bathroom, so he kicked down the door and apprehended her. As Williams and his partner were leaving the house with Fugitive, Resident stated that he was going to call the police. Instead of waiting for the police to arrive, Williams and his partner left the scene.

Williams was charged with burglary in the first degree, unlawful use of a weapon, and kidnapping in the third degree.

At trial, the parties jointly submitted a jury instruction to the trial court for the count relating to unlawful use of a weapon that included verdict-directing instructions for self-defense and defense of others but instructed on no other defenses.

3

The jury acquitted Williams of burglary in the first degree but found him guilty of unlawful use of a weapon and kidnapping in the third degree. Williams was sentenced to pay fines of $1,075 for his conviction of unlawful use of a weapon and $2,000 for his conviction of kidnapping in the third degree.

Williams timely appealed and asserts two points on appeal.

**Point I**

In his first point on appeal, Williams requests plain error review of the trial court's failure to, *sua sponte*, correct the jointly submitted jury instructions on the count for unlawful use of a weapon. Williams argues that the verdict-directing instruction failed to supply an omitted mandatory defense instruction, which would have instructed the jury that section 571.030.2(5) exempts "[a]ny person whose bona fide duty is to execute process, civil or criminal" from criminal liability for exhibiting a weapon if the exhibition is reasonably necessary for the fulfillment of that duty.[3] Because the trial court committed no error, plain or otherwise, Point I is denied.

---

[3] Section 571.030 provides:

1. A person commits the offense of unlawful use of weapons, except as otherwise provided by sections 571.101 to 571.121, if he or she knowingly:
. . . .
    (4) Exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner; or
. . . .
2. . . . . Subdivisions (3), (4), (6), (7), and (9) of subsection 1 of this section shall not apply to or affect any of the following persons, when such uses are reasonably associated with or are necessary to the fulfillment of such person's official duties, except as otherwise provided in this subsection:
. . . .

**Standard of Review**

"To preserve a claim of instructional error, a defendant must make a specific objection to the instruction and the grounds of the objection; the same objection must be renewed in the motion for a new trial." *State v. Torres*, 658 S.W.3d 270, 273-74 (Mo. App. W.D. 2023) (quoting *State v. Hendricks*, 619 S.W.3d 171, 178 (Mo. App. W.D. 2021)). Here, Williams recognizes that he failed to make this objection at trial and did not include it in his motion for new trial. Because Williams's point is not properly preserved, we may review it only for plain error. *See State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016) (conducting plain error review when defendant failed to preserve allegation of error regarding erroneous instruction by failing to object at trial and by failing to assert objection in his motion for new trial). "When the unpreserved allegation concerns instructional error, plain error exists when it is clear that the circuit court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted." *Zetina-Torres*, 482 S.W.3d at 810 (citation omitted).

**Analysis**

Section 571.030.2(5) exempts a person executing service of criminal process from criminal liability for exhibiting a weapon if the exhibition was reasonably necessary to accomplish service of that process:

> 2. . . . . Subdivisions (3), (4), (6), (7), and (9) or subsection 1 of this section shall not apply to or affect any of the following persons, when such uses are

---

> (5) Any person whose bona fide duty is to execute process, civil or criminal[.]

5

*reasonably associated* with or are necessary to the fulfillment of such person's official duties . . . :

> . . . .

> (5) Any person whose bona fide duty is to *execute process*, civil or criminal[.]

(Emphasis added.)  This exemption is a special negative defense:

> Subsections 2 and 5 of Section 571.030 contains a list of exemptions from the requirements of subsection 1.  If there is evidence of one of those exemptions, a paragraph negating that exemption *must* be submitted to the jury as paragraph Fifth.  See the discussion of essential elements and *special negative defenses* in the Notes on Use to MAI-CR 4th 404.02.

MAI-CR 4th 426.06, Note on Use 2 (emphasis added).[4]

Before a trial court has any obligation to instruct on a special negative defense, the defendant must carry the initial burden of injecting the issue into evidence.  *See, e.g., State v. Jones*, 686 S.W.3d 293, 304 (Mo. App. E.D. 2024) (holding that criminal defendant had the initial burden of injecting substantial evidence supporting the defense-of-another justification into evidence); *State v. Kendrick*, 550 S.W.3d 117, 122 (Mo. App. W.D. 2018) (holding that the burden was on criminal defendant to inject substantial

---

[4] We need not and do not discuss whether the invited error doctrine (and corresponding waiver of plain error review) is applicable to the verdict-directing jury instruction in question, *compare State v. Bolden*, 371 S.W.3d 802, 805-06 (Mo. banc 2012) (declining to engage in plain error review of a jointly submitted jury instruction because the error was considered invited), *with State v. Blurton*, 484 S.W.3d 758, 768 n.7 (Mo. banc 2016) (acknowledging in dictum the possibility that plain error review might be available if a trial court fails to *sua sponte* correct a jointly submitted set of jury instructions that completely omits an applicable mandatory instruction), because Williams did not just fail to request this special defense instruction when submitting the verdict-directing instruction to the trial court; he also failed to present any substantial evidence that would inject that issue into his criminal trial.

6

evidence supporting self-defense and, having failed to do so, the court was not required to submit a self-defense instruction, *sua sponte*).

Here, there simply was no substantial evidence that would inject the issue of a section 571.030.2(5) exemption requiring a special negative defense in the verdict-directing jury instruction.

First and foremost, even if we were to agree with Williams that a bail bond surety agent should be deemed a "process server" as contemplated by section 571.030.2(5)—which we do not—even such officers of the court serving process orders of the court are subject to Fourth Amendment constitutional prohibitions against unlawful and unreasonable searches of a person's home. *See State v. Ingram*, 662 S.W.3d 212, 227 (Mo. App. E.D. 2023) (explaining that the Fourth Amendment applies to any person acting as an "agent or instrument of the government"); *Ross v. Ford Motor Credit Co.*, 867 S.W.2d 546, 553-54 (Mo. App. W.D. 1993) (applying the Fourth Amendment to process servers who were executing a court-issued replevin order and determining that the process servers' seizure of property did not violate the Fourth Amendment because the seizure was performed reasonably).

Here, without so much as providing any identification or warrant information[5] to Resident—a home that Williams and his partner knew did not belong to Fugitive—once

---

[5] Williams testified that there was a warrant for Fugitive's arrest, but there is no evidence in the record that any such information was provided to Resident at the time Williams forcibly entered Resident's home without Resident's permission and then proceeded to point a gun at Resident's head to gain his submission to the unlawful entry.

7

Williams had convinced Sister to persuade Resident to open the front door to his home, Williams forcefully entered Resident's home without Resident's consent and then held a gun to Resident's head to force Resident into submission so that he and his partner could search for and physically remove Fugitive from Resident's home. This conduct is more than constitutionally unreasonable; it is outrageous.

Unauthorized entry into a person's home to arrest a third party, even pursuant to an arrest warrant for that third party, is an *unreasonable* search of that person's home unless accompanied by a search warrant for the home:

> In sum, two distinct interests were implicated by the search at issue here— [criminal defendant's] interest in being free from an unreasonable seizure and petitioner's interest in being free from an unreasonable search of his home. Because the arrest warrant for [criminal defendant] addressed only the former interest, the search of petitioner's home was no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant. Since warrantless searches of a home are impermissible absent consent or exigent circumstances, we conclude that the instant search violated the Fourth Amendment.

*Steagald v. U.S.*, 451 U.S. 204, 216 (1981).

Williams's conduct in forcibly entering Resident's home without *any* purported warrant authority to do so and without any permission from Resident to do so was, at minimum, unreasonable—and would constitute an unconstitutional search and seizure had Williams possessed the status of a process server contemplated by section 571.030.2(5)—which he did not. As such, under no circumstances can it be said that Williams was acting in a "reasonable" manner as it related to his conduct as a surety agent for a bail bond entity in this instance.

8

Additionally, Williams does not qualify as a process server that is contemplated by section 571.030.2(5).

On appeal, Williams does not argue that he has ever been a "process" server or that he was attempting to serve "process" on Fugitive during the incident. Instead, he asserts that "posting a surety bond and the actions necessary to return someone who has failed to appear in court on that bond are inherent aspects of the criminal system and the processes associated with a criminal case." However, nothing in the text of section 571.030.2(5) or in the case law applying the statutory exemption supports Williams's interpretation of expanding the definition of "executing process" to include the physical apprehension of a defendant by a surety agent for a bail bond entity.

The cases applying section 571.030.2(5), including its prior versions, have done so in the narrow context of the activity described therein—serving process. *See State v. Binnington*, 978 S.W.2d 774, 776 (Mo. App. E.D. 1998) ("The statutory exemption applies only if the defendant introduces evidence that he was performing duties as a process server while carrying the weapon."); *State v. March*, 130 S.W.3d 746, 748-49 (Mo. App. E.D. 2004) (holding that defendant's mere status as a process server did not entitle him to the application of the exemption unless the defendant also demonstrated that he was acting as a process server at the time of the alleged crime); *Stewart v. State*, 578 S.W.2d 57, 59 (Mo. App. E.D. 1978) (rejecting application of the exemption because, although defendant had been appointed as a process server from time-to-time, defendant was not actively serving process when he committed the offense of armed

robbery); *State v. Jackson*, 222 S.W. 746, 748-49 (Mo. 1920) (rejecting defendant's argument that a postmaster is entitled to the exemption out of a bona fide duty to protect federal property because that occupation did not fall within the statute's text); *State v. Hogan*, 273 S.W. 1060, 1061-62 (Mo. 1925) ("Section 3275 provides that nothing contained in this section shall apply to legally qualified sheriffs, police officers, and other persons whose bona fide duty is to execute process, civil or criminal, make arrests, or aid in conserving the public peace, nor to persons traveling in a continuous journey peaceably through this state. A state deputy beverage inspector is not one of the officers excepted in the proviso to the statute; hence the court properly refused the instruction prayed by the defendant.").

Williams cites no cases where courts have broadly construed section 571.030.2(5) to include bail bond entities and its surety agents, and our search has not located any such precedent.

Further, the current text and legislative history of the exemption contained in section 571.030.2(5) refute Williams's argument for expanding the scope of the statutory exemption to include any person engaged in physically apprehending a person for a bail bond entity when a person has failed to comply with the bail bond terms.

Before the current version of the criminal code defining unlawful use of a weapon was amended in 1981, its exemption subsection applied to a larger scope of persons: "nothing contained in this section shall apply to legally qualified sheriffs, police officers, and other persons whose bona fide duty is to execute process, civil or criminal, make

10

arrests, or aid in conserving the public peace, nor to persons traveling in a continuous journey peaceably through this state." § 571.115 (1978) (repealed 1981).

However, the current language of the subsection cited by Williams omits any mention of making arrests or other physical apprehensions and is constrained to "any person whose bona fide duty is to execute process, civil or criminal." § 571.030.2(5). In fact, the portion of the previous version of the exemption referring to arrests was separated from the portion referring to process servers and moved to section 571.030.2(1). *See* 1981 Mo. Legis. Serv. 639 (West) ("Sections . . . 571.115 . . . RSMo 1978 . . . are repealed and nine new sections enacted in lieu therefor, to be known as sections . . . 571.030 . . . .); *compare* § 571.115 (1978) (repealed 1981), *with* § 571.030.2(1) (Supp. 1981) ("Subdivisions . . . (4) . . . shall not apply to or affect any of the following:  (1) All state, county, and municipal law enforcement officers possessing the duty and power of arrest for violation of the general criminal laws of the state or for violation of ordinances of counties or municipalities of the state, or any person summoned by such officers to assist in making arrests or preserving the peace while actually engaged in assisting such officer[.]"), *and* § 571.030.2(5) (Supp. 1981) (Subdivisions . . . (4) . . . shall not apply to or affect any of the following:  (5) Any person whose bona fide duty is to execute process, civil or criminal[.]").

Thus, the current version of the exemption for those making arrests applies exclusively to publicly employed peace officers or those summoned to assist in making an arrest, not surety recovery agents for bail bond entities:

11

All state, county and municipal peace officers who have completed the training required by the police officer standards and training commission pursuant to sections 590.030 to 590.050 and who possess the duty and power of arrest for violation of the general criminal laws of the state or for violation of ordinances of counties or municipalities of the state, whether such officers are on or off duty, and whether such officers are within or outside of the law enforcement agency's jurisdiction, or all qualified retired peace officers, as defined in subsection 12 of this section, and who carry the identification defined in subsection 13 of this section, or any person summoned by such officers to assist in making arrests or preserving the peace while actually engaged in assisting such officer.

§ 571.030.2(1). The changes to the statute confirm the legislature's intent to separate the service of criminal process from arrests and to limit the exception available under section 571.030.2(5) to process servers—not surety recovery agents in the process of making a physical apprehension on behalf of a bail bond entity.

Because Williams failed to lay an evidentiary foundation to justify the instruction that he asserts was mandatory, the court was under no obligation to issue the instruction and did not commit instructional error, plain or otherwise.

Point I is denied.

## Point II

In his second point on appeal, Williams argues there was insufficient evidence to support his conviction for kidnapping in the third degree because it was "merely incidental" to the conduct underlying his conviction for unlawful use of a weapon. However, the "merely incidental" restriction is inapplicable here because it only applies to a subset of kidnapping in the first degree offenses, not to kidnapping in the third

12

degree. Because Williams does not challenge the sufficiency of the evidence to support any other element necessary to uphold his conviction, we reject his challenge.

**Standard of Review**

> An appellate court's review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. All evidence and inferences favorable to the State are accepted as true, and all evidence and inferences to the contrary are rejected. This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014) (citations and internal quotation marks omitted).

**Analysis**

Kidnapping in the third degree requires a person to "knowingly restrain[] another unlawfully and without consent so as to interfere substantially with his or her liberty." § 565.130. Unlike kidnapping in the first degree, "[t]he [kidnapping in the third degree] statute does not require that an individual do so in furtherance of an unlawful purpose." *State v. Ayansu*, 558 S.W.3d 135, 142 (Mo. App. E.D. 2018); *compare* § 565.110 ("A person commits the offense of kidnapping in the first degree if he or she . . . unlawfully confines another person without his or her consent for a substantial period for the purpose of . . . ."), *with* § 565.130 (lacking any mention of a purpose element).

13

Missouri courts have held that, in some cases, a defendant is not guilty of kidnapping in the first degree where the victim's confinement is "merely incidental" to another offense:

> Under Missouri precedent, the offense of kidnapping can only be sustained where the movement or confinement of the victim is more than merely incidental to another offense. Determining whether a defendant's movement or confinement of his victim is merely incidental to another offense or is sufficient to constitute the offense of kidnapping requires this Court to focus upon whether there was any increased risk of harm or danger to the victim from the movement or confinement that was not present as the result of the other offense.

*State v. Sistrunk*, 414 S.W.3d 592, 600 (Mo. App. E.D. 2013) (citations and quotation marks omitted); *but see State v. Conaway*, 557 S.W.3d 372, 380-84 (Mo. App. W.D. 2018) (declining to apply the merely incidental restriction articulated in *Sistrunk* to a prosecution under section 565.110(2) and concluding that the policy rationale for the merely incidental restriction does not justify extending its application beyond prosecutions for kidnapping under section 565.110(4)-(5)).

Despite the *Sistrunk* court's reference to "the offense of kidnapping," the merely incidental restriction does not have any application to Missouri's *current* criminal code relating to kidnapping in the third degree.

As an initial matter, at the time *Sistrunk* was decided in 2013, Missouri had a single statute for the offense of "kidnapping," section 565.110, and did not have multiple degrees of kidnapping. §§ 565.110-.130 (2000) (amended 2017). Effective on January 1, 2017, the Missouri statutory scheme was amended, changing "kidnapping" to "kidnapping in the first degree"; "felonious restraint" to "kidnapping in the second

14

degree"; and "false imprisonment" to "kidnapping in the third degree." 2014 Mo. Legis. Serv. 251-52 (West). Thus, when *Sistrunk* referred to the offense of kidnapping, it referred only to the offense that was then known as "kidnapping" and not to the offenses that were then known as "felonious restraint" and "false imprisonment," which are now considered lesser degrees of kidnapping.

Again, Williams does not cite any precedent supporting his argument that the legislature intended to add an additional element to these offenses when it merely changed those offenses' names without altering the substantive text of the elements of those crimes.

Furthermore, in articulating the merely incidental restriction, the *Sistrunk* court relied heavily on the Comment to the 1973 Proposed Code of Section 565.110:

> [T]he test for determining whether kidnapping, premised upon confinement, occurred, pursuant to [Model Penal Code] § 212.1, is whether the confinement is merely incidental to the commission of the underlying crime; duration of confinement is a factor in so determining.
>
> Consistent with the [Model Penal Code], in proposing and enacting the Missouri kidnapping statute, the Comment to the 1973 Proposed Code of Section 565.110 also avoids defining "substantial period" in terms of time. *See* Section 565.110, Comment to the 1973 Proposed Code. Instead, Comment to the 1973 Proposed Code also focuses upon confinement exceeding that which is merely incidental to the commission of another offense. *Id*. However, the Comment to the 1973 Proposed Code explicitly notes the amount of confinement necessary "cannot be defined precisely as it will vary according [to] the circumstances." *Id*. Clearly, the legislative history of Section 565.110 coupled with its derivation from the Model Penal Code manifest a legislative intent to punish as kidnapping those instances where confinement has a criminal significance above and beyond that necessary to consummate some underlying offense such as robbery.

*Sistrunk*, 414 S.W.3d at 603.

15

This Comment expressly recognizes that, while confinement merely incidental to another offense cannot support a kidnapping conviction, the same merely incidental confinement may support a conviction under the offense that was then known as felonious restraint: "A confinement or movement which is incidental to the other offense is not kidnapping. However, if *such confinement or movement, of itself, exposes the victim to a risk of serious physical injury, it would fall under the offense of felonious restraint in § 565.120*." Section 565.110, Comment to the 1973 Proposed Code (emphasis added).

In fact, the corresponding Comment for section 565.120—kidnapping in the second degree, which was formerly known as felonious restraint—confirms that the legislature intended section 565.120 to encompass interferences with liberty that did not rise to the level of kidnapping (in the first degree): "[t]his section provides for a felony conviction for substantial interference with liberty that creates a substantial risk of serious injury *but which does not fall within kidnapping under § 565.110*." Section 565.120, Comment to the 1973 Proposed Code (emphasis added). Thus, kidnapping in the second degree, formerly known as felonious restraint, is not subject to the merely incidental restriction applicable to some forms of kidnapping in the first degree.

"False imprisonment [now known as kidnapping in the third degree] is a lesser-included offense of felonious restraint [now known as kidnapping in the second degree]." *State v. Crudup*, 415 S.W.3d 170, 174 (Mo. App. E.D. 2013) (citing *State v. Cobbins*, 21 S.W.3d 876, 880 (Mo. App. E.D. 2000)). "An offense is included in another if it is

16

established by proof of the same or less than all the facts required to establish the commission of the offense charged." *State v. Putfark*, 651 S.W.3d 869, 877 (Mo. App. W.D. 2022) (cleaned up) (quoting § 556.046.1(1)). It follows then, kidnapping in the third degree, formerly known as false imprisonment, does not require proof of any additional facts beyond those necessary to prove kidnapping in the second degree, formerly known as felonious restraint.

Unlike kidnapping in the first degree, kidnapping in the second degree, formerly known as felonious restraint, does not require proof that the alleged unlawful confinement was more than merely incidental to another offense; thus, kidnapping in the third degree, formerly known as false imprisonment, must also not be subject to that requirement. To hold otherwise would require proof of additional facts beyond those necessary to prove the offense of kidnapping in the second degree, formerly known as felonious restraint.

Because the State was not required to prove that Williams's restraint of Resident was more than merely incidental to another offense in order to support Williams's conviction of kidnapping in the third degree (formerly known as false imprisonment), there is no merit to Williams's sufficiency of the evidence challenge.

Point II is denied.

## Conclusion

Finding no error, the trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.